ESDRAS B. TRUBEY

*v.*

JETTIE RICHARDSON *et al.*

*Opinion filed December 22, 1906.*

1. WILLS—*what does not raise presumption of undue influence by attorney.* Undue influence upon the part of the attorney for the testatrix cannot be presumed from the fact that a codicil was added to the will for the sole purpose of giving him certain articles of little value except as souvenirs, he not being a beneficiary under the original will.

2. SAME—*what does not show undue influence.* That the testatrix and a woman friend of hers were spiritualists, and that the latter sought to have the will executed privately, in the absence of the husband of the testatrix, does not show undue influence by such woman, where she received nothing under the will and there is nothing to indicate that she in any way influenced or dictated to the testatrix the disposition of the property.

3. SAME—*when decree upholding will should be sustained.* A decree upholding a will which is rational in its provisions must be upheld on appeal unless clearly contrary to the preponderance of the evidence, even though the evidence as to the mental condition of the testatrix is in such conflict that the jury might have been justified in reaching a different conclusion.

4. SAME—*belief in spiritualism and christian science is not evidence of insanity.* Belief in spiritualism and christian science is not, of itself, evidence of insanity, and it is only where such belief leads a person into insane delusions and induces the making of an irrational will that it may affect question of testamentary capacity.

5. SAME—*real test of testamentary capacity.* The real test of testamentary capacity is not whether the testatrix had sufficient mental capacity to transact ordinary business, but whether, at the time she executed the will, she had sufficient mind and memory to enable her to understand the business in which she was then engaged.

6. SAME—*when a person has sufficient testamentary capacity.* One who has sufficient mental capacity to remember the natural objects of her bounty, to recall to mind her property and make a rational disposition of it according to a plan or purpose in her mind, has testamentary capacity which, uninfluenced by others, is sufficient to enable her to make a disposition of her estate in law.

7. SAME—*what proof is competent as tending to illustrate mental capacity.* Proof of the condition of mind of the testatrix at the

time of the execution of the will, in view of its provisions and the amount and character of the property disposed of, together with proof of her mental condition prior and subsequent to the time of its execution, is competent, as tending to illustrate her mental capacity.

8. SAME—*when excluding opinions as to capacity of testatrix to transact business will not reverse.* Refusing to permit non-expert witnesses for the contestant to give their opinions as to the capacity of the testatrix to transact and understand ordinary business is not ground for reversal, where they are permitted to state that in their opinion the testatrix was insane and without capacity to make a will.

9. INSTRUCTIONS—*when instruction need not include every element essential to conclusion.* An instruction which does not attempt to direct a verdict but only purports to define the law on one branch of the case need not embody every element essential to the conclusion reached, if other instructions given perform that office.

10. SAME—*instruction held good in one case may be misleading in another.* An instruction in a will case which is a literal copy of an instruction held good by the Supreme Court in another case may be erroneous or misleading in the case on trial as unauthorized by the facts.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

On August 3, 1905, the plaintiff in error, Esdras B. Trubey, filed his bill in the circuit court of Cook county to contest the last will and testament of his wife, Luella B. Trubey. The bill alleged that on December 6, 1904, the said Luella B. Trubey executed an instrument purporting to be her last will and testament and departed this life June 3, 1905, leaving the complainant, her husband, and Mollie G. Taylor and Laura Russell, her sisters, and P. Henry Bridgewater and Walter S. Bridgewater, her brothers, as her only heirs-at-law and legal representatives; that by said last will and testament she disposed of her property as follows: To Mollie G. Taylor $750; to Laura Russell $500; to Walter S. Bridgewater $500; to P. Henry Bridgewater $250; to her husband, Esdras B. Trubey, such interest in her estate as he was entitled to under the laws and statutes of the State of Illinois or of any other State or country wherein

her property was situated, subject, however, to a charge against him of $2000, with accrued interest, on account of a loan which she made to him about one year prior to the date of the will, with interest at five and one-half per cent, and in the event that he made claim to the silverware, pictures, jewelry and diamonds bequeathed to her niece, Jettie Richardson, and endeavored to get possession thereof, then the said Jettie Richardson was to have the value of the same out of the remainder of the estate, the interest of the said husband to be taken, if possible, out of the real estate and not including the household goods. The remainder of the estate was given to the niece, Jettie Richardson, and she was appointed executrix under the will. On March 16, 1905, a codicil to said will was executed, in and by which the testatrix gave and bequeathed to the defendant Arthur B. Pease one Austrian jardiniere and pedestal and one Austrian vase.

The bill further alleged that said last will and testament and codicil were duly admitted to probate by the probate court of Cook county on July 17, 1905, and the said Jettie Richardson was duly appointed and qualified as such executrix; that the said Luella B. Trubey, at the time of executing the said instruments in writing, was not of sound mind and memory, but through disease and illness her mental faculties were greatly impaired, so as to render her incapable of making any just or proper distribution of her estate; that the defendant Arthur B. Pease, and one Ophelia Soule and others, used and exercised undue arts, fraud and misrepresentations to induce the said Luella B. Trubey to execute the said instrument in writing; that in executing the same she was, in fact, under improper restraint and undue influence; that said Arthur B. Pease represented to said Luella B. Trubey that her husband had married her for her money and had never loved her, and that it was designed by him, in marrying her, to secure all her estate and property at her death, which representations said Pease knew at the time to be untrue; that the said Ophelia Soule made like representations

and statements to said Luella B. Trubey, and pretended that she received messages from the spirit land telling her that the said Luella B. Trubey should dispose of her property as indicated in the purported will, and the said Luella B. Trubey being a spiritualist did believe said representations and was imposed upon in making the will in question which purports to be her last will and testament.

The prayer was that Jettie Richardson, Arthur B. Pease, Mrs. Johanna Peters, Mrs. Sophia Pfuhl, Mollie G. Taylor, Laura Russell, Walter Scott Bridgewater, P. H. Bridgewater, and Jettie Richardson as executrix, be required to answer, and that the probate of said instrument in writing be set aside and declared null and void and not the last will and testament of said Luella B. Trubey, and that an injunction issue restraining Jettie Richardson, executrix, from disposing of or interfering with the real estate of Luella B. Trubey, deceased, and for further relief.

Upon answers filed by the defendants the cause was tried before the court and a jury and a verdict rendered sustaining both the will and codicil, and a decree was entered in accordance with the verdict. To reverse that decree a writ of error has been procured from this court.

FREDERICK A. BROWN, and SAMUEL C. HERREN, (WILLIAM R. T. EWEN, Jr., of counsel,) for plaintiff in error.

PIERSON & PEASE, and GEORGE A. MILLER, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted by plaintiff in error that the verdict is contrary to the evidence. It appears from the testimony that the testatrix had been married twice. Her first husband died in 1901, leaving her with property of the value of about $25,000, consisting of her home in the city of Chicago, a flat-building adjoining it, two other pieces of property in the city, and certain loans and stocks, which is the same prop-

erty sought to be disposed of by her will being contested. On April 20, 1903, she was married to the plaintiff in error, and he and his daughter resided with her until about the time of her death. It seems to be admitted that she was a woman of more than average intelligence, well educated and highly cultured, economical, cautious, and possessed of at least average business experience. After the death of her first husband she settled the affairs of his estate, and continued to manage her separate property until the time of her last sickness, which began in August, 1904, when she was attacked by a disease which developed into cancer of the stomach. She was able to be up, however, until some time in November of that year, after which she was confined to her bed most of the time. It also is admitted that until the 24th day of November, 1904, she was of sound mind and capable of attending to all ordinary business affairs. For some time prior to December 6 she had spoken of making a will, and on that morning requested Mrs. Soule to send for her attorney, the defendant Arthur B. Pease, who came about noon, and she gave him a memorandum from which to draw the will. He returned to his office and the will was there drawn by his partner, Mr. Pierson. A clerk in the office, David Mulcahy, then took it to the home of the testatrix, where the same was executed in the presence of Hannah Woodroffe and Maud L. Merchant, who witnessed it.

It is insisted that the evidence shows that Mrs. Soule and the testatrix were spiritualists, and that the former was angry at the plaintiff in error and sought to influence his wife against him, and on the morning the will was executed she sent the nurse down town on an errand, sent for Pease and privately sought to have the will executed, against the positive orders of the attending physician and without the knowledge of the husband. We do not think these contentions altogether sustained by the evidence. It is true, Mrs. Soule and the testatrix were spiritualists and the former doubtless sought to have the will executed privately, but it

does not appear that she was not carrying out the wishes of the testatrix. Neither does the evidence show that she in any way influenced or dictated to the testatrix the disposition she should make of her property. Her actions, so far as shown, were in no way inconsistent with a purpose to care for and assist a sick friend. As to the defendant Pease, it appears that he had been the attorney for the testatrix for a number of years, and his partner, Pierson, had so acted for a longer period. There is no evidence whatever tending to show that before the morning he was sent for, Pease knew that the testatrix wanted to make a will or the manner in which she desired to dispose of her property. He went to her home in response to a summons in the ordinary course of business, where he found her in bed and there received from her the information from which the will was executed. We have been unable to find the slightest proof in the record of any undue influence on the part of Mr. Pease in procuring the execution of the original will. Stress is laid upon the fact that the codicil was made solely for his benefit; but here again the evidence wholly fails to show that he influenced her to make it or even knew of her purpose to do so. It is true that the only bequests made by the codicil were to him; but the articles were of little value except as souvenirs, and the bequest cannot, therefore, under the circumstances in proof, be held sufficient to raise a presumption of fraud or improper influence on the part of the attorney. (*Compher v. Browning,* 219 Ill. 429.) It is a significant fact that neither of the parties charged with undue influence takes anything whatever by the will. The only evidence appearing in the record to support the charge of fraud and undue influence is that of witnesses who testified that Mrs. Soule said in their presence that she had the will made as she wanted it, or words to that effect. But Mrs. Soule denies that she made the statements, and they are inconsistent with all the testimony as to what took place prior to and at the time the will was signed and witnessed.

Our conclusion is that the evidence clearly preponderates in favor of the proponents on the issue of undue influence, both as to the will and codicil. In fact, the main controversy in the case is as to the mental condition of the testatrix at the time of the execution of the will.

As already stated, it was admitted upon the trial that up to the time of the last sickness the testatrix was of sound mind and memory, which was about the 24th of November, 1904. From that time until the date of the execution of the instrument only twelve days elapsed, and therefore the evidence of her mental condition on December 6 is confined to a brief period. Of course, the testimony as to her physical and mental condition after the execution of the will was competent and proper to be considered as affecting the question of her mental condition on the date she executed the will. To say that the evidence bearing on this question is in conflict only mildly expresses the true condition of the testimony. To attempt to reconcile it would be utterly futile. All we can do is to determine as best we can from the printed record where the preponderance lies, or, rather, whether from the whole evidence we can say that the conclusions of the jury and chancellor are so far contrary to the weight of the testimony that we ought to interfere, the rule being, that where the testimony is conflicting in cases like this, a court of review will not disturb the finding and decree of the chancellor upon the evidence unless it is clear that error has been committed. The will itself cannot be said to be an unreasonable one. Testatrix bequeathed her estate to near relatives. She had no child or children nor descendants of such, and she gave her husband all that he was entitled to under the statute of this State, only requiring him to pay the $2000 indebtedness to her estate, which we do not understand him to deny that he justly owed. He was her second husband and she his third wife, and it was not unnatural that she should have desired a portion of her estate to go to her brothers, sisters and niece. No one, we think, can seriously

contend that the will does not make a rational disposition of the testatrix's estate.

Turning to the testimony of the several witnesses on either side, we think that most of the immediate friends and neighbors of the testatrix, and those who seemed to have the better opportunity of judging of her mental condition from the standpoint of non-experts, give it as their opinion that she was of sound mind and memory at the date of the execution of the will. Medical experts and nurses who attended her at and after the time of the making of the will gave it as their opinion that she was very weak in body and of unsound mind, and according to this testimony, as would doubtless be the case, she grew weaker until the time of her death. The evidence does, however, tend to prove that she continued to transact business, to a limited extent at least, long after the execution of the will, by signing and endorsing checks, which were paid. We shall not attempt to analyze or discuss the testimony of the several witnesses at length. A careful reading of it has led us to the conclusion that although the jury might have been justified in reaching a different conclusion, it cannot be said that the verdict which they rendered and the decree of the court are so manifestly contrary to the clear preponderance of the testimony as to justify our interference under the foregoing rule. In this case it appears that the testatrix was a spiritualist and had faith enough in christian science to employ a nurse who called herself a healer, but these beliefs furnish no test for ascertaining her soundness of mind. A belief in these things, of itself, is not evidence of insanity. It is only when such a belief leads the person into insane delusions and induces the making of an irrational will that any religious belief can be allowed to affect the question of testamentary capacity. In this case there is no claim that Mrs. Trubey's belief in spiritualism or christian science in the slightest degree induced the making of the will in question. On the whole evidence we are of the opinion that the decree below is fairly

sustained by the evidence and that it is not our province to interfere with it, even though we might, as an original proposition, have reached a different conclusion. *Biggerstaff* v. *Biggerstaff,* 180 Ill. 407; *Elmstedt* v. *Nicholson,* 186 id. 580; *Amos* v. *American Trust and Sav. Bank,* 221 id. 100.

It is insisted, however, that the court below committed reversible error in its rulings upon the admissibility of testimony. Our attention has been called to a large number of instances in which it is contended the court committed such errors. These rulings were upon the competency of non-expert opinions as to the testatrix's capacity "to transact business," "to do business," "to understand business" and "to understand and transact ordinary business affairs." The real question to be determined by the jury was not whether the testatrix had sufficient mental capacity to comprehend and transact ordinary business, etc., but whether, at the time she executed the paper purporting to be her will, she had sufficient mind and memory to enable her to understand the particular business in which she was then engaged. If she had sufficient capacity to remember the natural objects of her bounty, to recall to mind her property and make a rational disposition of it according to a plan or purpose in her mind, she was possessed of testamentary capacity generally, and with such capacity, uninfluenced by others, might make a disposition of her estate in law. In other words, proof of the condition of her mind at the time of the execution of the will, in view of its provisions and the amount and character of the property thereby disposed of, together with proof of her mental condition prior and subsequent to the time of its execution, was competent, as tending to illustrate her mental capacity. Hence facts shown, whether anterior or subsequent, depend for their force upon the clearness and certainty with which they tend to demonstrate her condition of mind and memory at the very time of the execution of the will. (*Craig* v. *Southard,* 148 Ill. 37; *Taylor* v. *Cox,* 153 id. 220; *Ring* v. *Lawless,* 190 id. 520.) Under this rule, manifestly

a person, though not having sufficient mental capacity to transact ordinary business or to transact his or her business or the ordinary business affairs of life, may still be competent to make a will,,provided he have sufficient mental capacity to comprehend and understand the particular business then engaged in. The excluded testimony coming from the contestant would not, therefore, be in itself proof of the question before the jury, but some of it, at least, we think would have fairly tended to prove that issue and should have been admitted. In other words, it seems to us from a reading of the record that the ruling of the trial court against the contestant was too strict in excluding all testimony offered on his behalf as to the capacity of the testatrix to transact the ordinary business affairs of life. The witnesses, however, while not permitted to express opinions on these specific questions, were allowed to, and did, state to the jury that in their opinion she was insane, of insane mind, and without the capacity to make a will. There was therefore no reversible error in the exclusion of testimony.

Counsel further insist that the court erred in permitting the jury to take to their room, upon retirement, the original will with a stamp upon it of the judge and clerk of the probate court admitting it to probate, and in support of this call attention to *Weston* v. *Teufel,* 213 Ill. 291, where it was held that in such a case admitting in evidence, over contestant's objection, an endorsement on the will by the probate judge showing the will to be proved and admitted to probate, is reversible error where the evidence is close and conflicting. We have also held to the same effect in *Craig* v. *Southard,* 148 Ill. 37. In those cases it will be observed the endorsement or certificate of the probate judge was admitted in evidence over the objection of the contestants. In this case the endorsements were expressly excluded in the offer of the proponents of the will, and, of course, no objection was made. There is nothing in the record to show that the jury were permitted to take the will to their room. Cer-

224—10

tainly there is nothing to show that any objection was made upon the part of the plaintiff in error to their doing so. There is nothing, therefore, to show that such certificates were considered by the jury nor that they were allowed to be taken by the jury upon their retirement. Neither does it appear that any such alleged error as is here complained of was urged as a ground for a new trial in the court below. We are therefore of the opinion that counsel for defendants in error are right in their contention that this point is not before this court for decision.

It is finally objected that the court erred in giving instructions on behalf of proponents. It is insisted on behalf of defendants in error that no proper exceptions were taken to the giving of the instructions now objected to, and the abstract of the record sustains this contention. We have, however, examined the instructions given as a series, and have reached the conclusion that there was no reversible error in that regard. One objection made to some of the instructions is, that they failed to include the questions of undue influence and of the confidential relations existing between the attorney, Pease, and the testatrix. A party is not bound to include in a single instruction his entire case or defense, but only to present his theory of the same. An instruction which only purports to define the law of one branch of the case need not embody every element essential to sustaining the conclusion, where other instructions are given which perform that office. (*Judy* v. *Sterrett,* 153 Ill. 94.) The plaintiff is only obliged to present the law correctly in his instructions applicable to his theory of the case, and is not bound in every instruction to anticipate and exclude every possible defense. It is not necessary in an instruction to negative matter of mere defense. (*Underwood* v. *Wolf,* 131 Ill. 425; *Mt. Olive Coal Co.* v. *Rademacher,* 190 id. 538.) Most of the instructions objected to seem to have been copied from cases previously before this court, and counsel for the defendants in error attempt to sustain them largely for that reason. We

have heretofore had occasion to say that an instruction, though literally copied from another case, may be erroneous or misleading in the case upon trial, for the reason that very often the facts which authorize the giving in one case may be altogether wanting in another. We find, however, that the instructions in this record, taken together, fairly and with substantial correctness lay down the law applicable to the facts of the case, and there was no reversible error in giving those objected to on behalf of the proponents.

We have endeavored to give the case full and careful consideration, and are of the opinion that the decree below is in substantial compliance with the law and facts of the case and should be affirmed.                *Decree affirmed.*