(No. 11329.—Reversed and remanded.)

HARRIET M. TETER et al. Plaintiffs in Error, vs. DANIEL
R. SPOONER et al. Defendants in Error.

*Opinion filed June 21, 1917..*

1. WILLS—*whether hardening of the arteries affected testator's
mind must be proved in each particular case.* In a proceeding to
contest a will on the ground of mental incapacity, the question
whether arterio sclerosis, or hardening of the arteries, had affected
the mind of the testator is not merely one of the tendency of that
disease but the proof must also show its effect in the particular case.

2. SAME—*a non-expert witness must state facts upon which he
bases his opinion as to mental condition of testator.* The opinion
of a non-expert witness that a testator is not of sound mind and
memory is entitled to no weight where he states no facts or cir-
cumstances which may induce a reasonable belief of unsoundness
of mind, and before giving such opinion the witness must detail
the facts upon which he bases his opinion.

3. SAME—*witness should give no opinion as to whether testa-
tor was easily influenced.* No matter what previous foundation
has been laid as to the knowledge of the witness as to the charac-
teristics of the testator, the witness should not be called upon to
express an opinion as to whether the testator was of a positive
character or whether he was easily influenced but should merely
state the facts, leaving the jury to draw the conclusions.

4. SAME—*transcript of evidence of attesting witnesses, prop-
erly certified, is admissible on trial of will contest.* The original
transcript of the evidence of the attesting witnesses before the
probate court, certified as correct by the probate judge, can be in-
troduced in evidence on the trial of a will contest case, whether
such evidence was taken before the probate judge in open court or
before an assistant.

5. SAME—*what facts require some proof to rebut inference of
undue influence.* Where the testator's confidential attorney, who
prepared the will, was appointed trustee of a large fund and with
broad powers thereover, both in respect to the management and in-
vestment of the fund and the matter of compensation for his ser-
vices, some proof is required to rebut the presumption of undue
influence arising from such facts. (*Gum* v. *Reep,* 275 Ill. 503,
followed.)

6. PRACTICE—*defendant does not waive his right to take excep-
tions by introducing evidence he has objected to.* After the court

has overruled a defendant's objections to a certain class of evidence the defendant may introduce evidence of the same class to meet that of the plaintiff without waiving his right to urge his exceptions on appeal.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

FREDERICK A. BANGS, and RICHARD H. COLBY, (M. J. MITCHELL, and J. R. FILES, of counsel,) for plaintiffs in error.

GIDEON S. THOMPSON, for certain defendants in error.

E. I. FRANKHAUSER, for defendant in error Ella Janson.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This bill was filed to test the validity of the will of William H. Godair, deceased, on the grounds of testamentary incapacity and undue influence. The jury found in favor of the proponents, holding the will valid, and the circuit court of Cook county entered judgment dismissing the bill in conformity with the verdict. This writ of error was then sued out.

William H. Godair executed his will October 26, 1911, disposing of over a half million of dollars, of which a three-ninth's share was given to his wife, Harriet A. Godair. At the time he executed the will the only other member of his family was his son, Arthur. This son died before the testator. There was an explanatory statement in the will that the son, Arthur, had already received previously from the testator, real estate, securities, stocks and notes specifically enumerated, amounting to $242,350, and that the testator thought Arthur had been liberally provided for. To his secretary, Daniel R. Spooner, he bequeathed $5000. About two-thirds of his estate he devised and bequeathed in trust for the founding of an old people's home in Cook

county. The will set out at length and in considerable detail his plan for said home and how the money was to be used for that purpose. Although there is no specific time stated in the will for the carrying out of this project, it seems plain from what is stated therein that he intended to have it carried out by his trustees as soon as practicable. He named his secretary, Daniel R. Spooner, and his lawyer, Adolph L. Benner, and the survivor of them, as executors and trustees, requiring them to give only their individual bonds for the faithful performance of their duties. On January 3, 1913, he executed a codicil, the material change therein, other than a change in the disposition of certain jewelry, being that the home could be located in any place in Illinois instead of in Cook county, only. The plaintiffs in error here, who were contestants in the court below, are the nieces and nephews of the testator, being the children of his half-brother, George Teter.

The testimony of the attesting witnesses, Gustav N. Beerly and Edward Moore, to the will, and Gustav E. Beerly, Walter C. Hildebrand and Charles E. Morris to the codicil, taken on the probate of the will, was introduced in evidence, containing their statements that they believed the testator of sound mind and disposing memory at the time he signed such respective instruments. Many witnesses, over fifty in number, testified on behalf of the proponents, among them men engaged in banking, real estate or other business. Most of them testified to the facts, either as to their business relations or conversations and observations arising from their acquaintance. Some of them had been in partnership for some length of time with the testator. Practically all of them, after so testifying to the facts, stated that they believed the testator was of sound mind and memory. Some few of them had noticed a decline in his physical condition before his death but none of them testified that they had noticed any marked change in his mental condition. With many of these witnesses he had talked

about his plan to found an old people's home, and stated to some of them that his principal reason for doing so was that his mother had been compelled to go through life poor, but he said nothing to any of them that in any way indicated mental unsoundness.

The testator died on October 13, 1914, at the age of sixty-nine years and eight months, and Dr. Joseph L. Miller, who had known him since 1907, stated that he treated him for diabetes mellitus and for angina pectoris. He signed the death certificate, giving the cause of death as angina pectoris and arterio sclerosis. The testator had been in the cattle business in Texas and the banking and real estate business in various parts of this country and had amassed his fortune largely through his own business shrewdness. He had two sons, Floyd and Arthur, both of whom married. Floyd died before the will was drawn, and, as stated, Arthur died not long before the testator's death. Neither left children surviving. The evidence tends to show that the testator liked the wife of his son Floyd but disliked very much the wife of Arthur. He had apparently retired from the full and active conduct of his business in 1905.

Several witnesses, some seventeen in number, testified on the part of the plaintiffs in error that they believed the testator of unsound mind, but most of this evidence was in the nature of conclusions, and the positive facts testified to by them were, under the rulings of this court, hardly sufficient to justify these conclusions. One witness for the plaintiffs in error testified that she had a long talk with Godair, and that he seemed very sad, weak and frail and his conversation was disconnected; that he did not dwell on any one subject; that he was very pale and weak at the time, and that she believed during the year 1911 his mind was becoming weaker. This witness last saw Godair on an elevated train a few months before his death. Another witness said in 1910 Godair appeared sad and different; that she noticed a change in his appearance; that he

was sad or morose; that in 1914 he seemed different in his appearance; that he had failed considerably in later years; that he was more depressed than ever, giving the appearance of a man worried and weak in every way; that she considered him of unsound mind from 1910 to 1914; that she could not remember anything he said that made her consider him of unsound mind; that it was the way he talked, and his sadness and depression. George E. Janson, a step-son of Ella Janson, who is a daughter of the testator's half-brother and one of the contestants, who had called to ask Godair to get him a position, testified that Godair had forgotten all about the matter when he called on him a second time; that the second occasion was when Godair's half-brother had died; that Godair and Spooner, his secretary, held a whispered conversation, and then gave Mrs. Ella Janson, who accompanied him, $125, saying he thought that would be sufficient. Apparently this money was given towards the funeral expenses or the traveling expenses of Mrs. Janson to Iowa to attend the funeral. This witness had formed the opinion that Godair was of unsound mind because he had forgotten about the witness' first visit in search of a position. Brice Hutchinson, an old acquaintance, testified that the last time he saw the testator he was not as jovial and jolly as he had previously been and was entirely different; that it was difficult to get him into conversation; that he would change from one subject to another abruptly and didn't have his mind in one channel; that physically he was not the man he had been and dressed indifferently. Several other witnesses also testified as to his carelessness in dress in his later years, while, apparently, he had been quite attentive to such matters during his active business life. Witness Stillman T. Meservy noticed a change in testator's mental condition; that he was not as alert, mentally, as he had been earlier in their twenty-five years' acquaintance. A physician, Dr. Neil L. O'Herrin, testified as an expert in answer to a hypothetical

question including various symptoms which, it is alleged, the testimony shows the testator exhibited before his death, and stated he thought a man who had those symptoms at that age would be suffering from senile dementia.

No direct testimony was introduced to show any undue influence, but reliance as to that issue is placed upon the fiduciary relation existing between the testator and Daniel R. Spooner, his private secretary, and Adolph L. Benner, his attorney, who were appointed trustees of the fund for establishing the old people's home. It is contended by counsel for plaintiffs in error that the circumstances show that these people could, and did, influence Godair in making his will; that Benner had always been his confidential attorney, and the evidence tends to show that he had informed Godair before the will was made that his son, Arthur, had offered Benner a large sum of money if he would get Godair to draw a will in his favor, and there is evidence tending to show that the testator was greatly grieved because his son tried to thwart his purpose. It is also argued earnestly that the will was made largely in the interest of Benner and Spooner. The latter received $5000 as a bequest. Both of them were made trustees and executors, the will providing that "they may pay commissions for collections, counsel fees, railroad fares," and such sums as they thought proper or "expedient for the management, protection and conservation of the estate under their control, and such expenses so made shall not be questioned by any of the parties in interest." The will also provided that Benner should receive reasonable compensation for his services as executor and trustee, but that all services rendered in behalf of the old people's home should be without compensation, for the benefit of the home.

Counsel for plaintiffs in error also argue at some length that the diseases that were affecting the testator showed that his mind was being weakened. Whether arterio sclerosis, or hardening of the arteries, has affected the mind

is not a question of what the tendency of that disease is, but the proof must be as to its effect in the particular case. (*Carnahan* v. *Hamilton,* 265 Ill. 508.) The opinion of a non-expert witness that a testator is not of sound mind and memory is entitled to no weight where he states no facts or circumstances which could induce a reasonable belief of unsoundness of mind. Before giving such opinion he must detail the facts and circumstances upon which he bases his opinion. *Brainard* v. *Brainard,* 259 Ill. 613.

During the trial counsel for defendants in error repeatedly asked of various witnesses, in substance, the following question: "What did you observe as to whether or not Mr. Godair was a man of fixed opinions or whether or not he was a man easily influenced by others?" This question was objected to on the ground of incompetency every time it was asked, but over the objection and exception of counsel for plaintiffs in error it was permitted to be answered. One of the witnesses answered this question by saying "he had a very positive opinion of his own as to the way a thing ought to be done and he would not listen very much to other people." Another said, "He was very positive in his way of doing business." Another, "I considered him a man of decided opinions." Another, "Godair always had his own idea of things and was of positive character." It is the province of witnesses in a case of this kind to give the jury the facts within their knowledge, and it is the province of the jury to form an opinion as to the inferences to be drawn from these facts. Witnesses should not be permitted to improperly express opinions on the question as to whether a testator was of a positive character or whether he was easily influenced. (*Carpenter* v. *Calvert,* 83 Ill. 62; *Michael* v. *Marshall,* 201 id. 70; *Compher* v. *Browning,* 219 id. 429.) As was said by this court in *Lyman* v. *Kaul,* 275 Ill. 11, on page 21: "This testimony was not the statement of a fact but the expression of the opinions of the witnesses and was incompetent."

Counsel for defendants in error answer this objection by saying, among other things, that counsel for plaintiffs in error are not quite fair in stating the questions of which they complain; that an inspection of the record shows that these witnesses were first asked whether or not they had observed the characteristics of Godair as to whether he was a man of fixed opinions or whether or not he was a man easily influenced by others, and it was only after a witness had stated that he had observed these characteristics that he was asked what he had observed. Conceding this to be true as to every witness, it does not, in our judgment, lessen the improper character of the testimony objected to. No matter what previous foundation had been laid as to the knowledge of the witness as to the characteristics of the testator, the witness should not be called upon to express an opinion on this subject but should merely give the facts and let the jury draw the conclusions from such facts.

Counsel for defendants in error further insist that it was not error to permit these questions to be asked because counsel for plaintiffs in error asked several witnesses, on cross-examination, this same question. The record shows that on the direct examination of these witnesses a similar question had been asked of most, if not all, of them by counsel for defendants in error and over objection and exception the witnesses were allowed to answer. It would, indeed, be an extraordinary rule, after these questions had been asked on direct examination, to hold that counsel for the plaintiffs in error could not, on cross-examination, ask questions of a similar character without waiving objections previously made to the questions on the direct examination. Indeed, this court, after a review of the authorities in other jurisdictions, has held that after the court has overruled defendant's objections to a certain class of evidence the defendant may introduce evidence of the same class to meet that of the plaintiff without waiving his right to claim his exceptions on appeal. (*Chicago City Railway Co.* v. *Uh-*

*ter,* 212 Ill. 174, and cases there cited.) There can be no question that it was error to permit the asking and answering of these questions and that this error was not waived by any questions or acts of counsel for plaintiffs in error.

Judge Lewis Rinaker was one of the three witnesses to the will. It does not appear that he testified at the time the will was probated and he was not a witness on the hearing in the circuit court on this trial. Francis Loughran, a clerk in the employ of Benner, was called as a witness and stated that he went to Modesta,—apparently the present home of Judge Rinaker, in the central part of the State,—and served a subpœna upon him, and he then was allowed to answer, over objection and exception, that Judge Rinaker said he would go a long way for Benner but that his health was so poor that he could not go to the trial by train. Of course, this last statement of the witness was hearsay and improper. It was proper to show that Judge Rinaker had been served with a subpœna to testify as a witness in the case, and it would have been proper to show that Judge Rinaker was unable to attend on account of ill health.

Counsel for plaintiffs in error further argue that the court improperly admitted the transcript of the evidence of the attesting witnesses taken in the probate court. This transcript was certified by the judge of the probate court of Cook county as correct. The argument of counsel for plaintiffs in error appears to be that this transcript of evidence should have been certified as correct by the clerk of the probate court, with the seal of the court attached. They base this argument apparently upon the ground that the statute does not authorize or justify the judge of the probate court to certify to the transcript of the evidence as being correct, as there is no law providing that such a record certified to by the judge shall be kept in the probate court. They quote as sustaining their position the following from *Schaefer* v. *Wunderle,* 154 Ill. 577, on page 592:

"If a person in official station is bound to record a fact the proper proof is a copy of the record duly authenticated. 'But as to matters which he was not bound to record, his certificate, being extra-official, is merely the statement of a private person and will therefore be rejected.' " And also from *Blair* v. *Sennott,* 134 Ill. 78, on page 84: "In no case can any fact be considered, whether consisting of evidence given upon the hearing or of affidavits in support or denial of motions, unless it is lawfully a part of the record brought before the court. * * * There is no mode by which the evidence given in a proceeding before the probate court can be lawfully preserved and made a part of the record."

Section 3 of our statute on wills provides: "It shall be the duty of each and every witness to any will, testament or codicil, made and executed in this State, * * * to be and appear before the county court on the regular day for the probate of such will, testament or codicil, to testify of and concerning the execution and validity of the same," etc. (Hurd's Stat. 1916, p. 2695.) Section 7 of this chapter provides that in contests with reference to the validity of the will, "in all such trials by jury as aforesaid the certificate of the oath of the witnesses at the time of the first probate, shall be admitted as evidence and to have such weight as the jury shall think it may deserve."

There can be no question, under the decisions of this court, that if the evidence of the attesting witnesses was taken before the probate court and properly certified to, it can be introduced in evidence on the trial of a will contest. (*Pendlay* v. *Eaton,* 130 Ill. 69, and cited cases; *Thompson* v. *Owen,* 174 id. 229; *Baker* v. *Baker,* 202 id. 595; *Wilkinson* v. *Service,* 249 id. 146.) Section 13 of our statute on evidence provides that "the papers, entries and records of courts may be proved by a copy thereof certified under the hand of the clerk of the court having the custody thereof, and the seal of the court, or by the judge of the court

if there be no clerk." (Hurd's Stat. 1916, p. 1306.) This court had a somewhat similar case before it in *Baker* v. *Baker, supra,* and said (p. 616) : "The defendant put in evidence the will and the testimony of the subscribing witnesses given when the will was admitted to probate, which was *prima facie* evidence of its validity. * * * We are unable to see why this evidence was not competent when it was first offered, nor do we think the order in which it was introduced in any way affected its competency. Counsel seem to think that a transcript of the testimony of the attesting witnesses is not what is meant by the statute in the use of the language, 'the certificate of the oath of the witnesses at the time of the first probate,' though that specific objection was not made when the testimony was offered. The language of the statute may be somewhat obscure, but we think it means simply the *ex parte* declaration, on oath, of the attesting witnesses required by section 2, *supra.* Whether that declaration is in the form of an affidavit or questions and answers is immaterial." Practically the same situation was presented in *Wilkinson* v. *Service, supra,* and the court in both those cases held that the transcript of the testimony of the attesting witnesses was competent.

As we understand this record, the original transcript of the evidence certified as correct by the probate judge was introduced in this case. If it was only a certified copy of the original transcript of the testimony in the probate court, under the authorities it should have been certified to by the probate clerk under the seal of the court, but if it was such a record that it could have been admitted if so certified to, the original was certainly admissible in evidence. "The records of other courts within the same State are generally proved by the production of copies, certified or exemplified by the clerk of the court having their custody. * * * The original records of the proceedings of other courts within the same State are also admissible when identified by the oath of the proper custodian. The original

is, of course, admissible whenever a copy would be competent." (Jones on Evidence,—2d ed.—sec. 623.) This court held the original record admissible in *Walker* v. *Doane,* 108 Ill. 236. See, also, *Stevison* v. *Earnest,* 80 Ill. 513.

Counsel for plaintiffs in error also insist that this transcript of evidence was not admissible because it was not taken before the probate judge in open court but before an assistant. This identical question has been ruled on adversely to plaintiffs in error's contention in *Wilkinson* v. *Service, supra,* and we see no reason to change the conclusion there reached. There was no error committed in the admission of the testimony of the attesting witnesses taken before the probate court at the time the will was probated.

Counsel for plaintiffs in error further insist that the court erred in giving for the proponents the following instruction:

14. "The court instructs the jury that the defendant Adolph L. Benner is not to be regarded as taking beneficially under the will and codicil here in evidence, inasmuch as the said will and codicil give him no beneficial interest in the estate of testator but simply impose upon him duties which by his acceptance of the trust he binds himself to perform, and for such performance he is entitled to a reasonable compensation from said estate."

Counsel also allege error in refusing to give for plaintiffs in error instruction No. 23:

"Even though the jury find, from the evidence, that the defendant Adolph L. Benner does not benefit substantially by the terms of the will, still if the jury believe, from the evidence, that the said Adolph L. Benner, while acting as the attorney for the said William H. Godair, drafted and prepared said will and secured the witnesses thereto and is benefited in any degree by the terms of said will, you are instructed that this is a suspicious circumstance, which circumstance, accompanied with slight proof of undue influence, requires the said Adolph L. Benner to prove, by clear

and convincing proof, that the said William H. Godair was not unduly influenced in the making and executing of the said last will and testament."

The argument of counsel for plaintiffs in error is to the effect that the giving of one of these instructions and the refusing the other was prejudicial error to them; that Benner, as attorney for the testator, was occupying a fiduciary relation and that he was receiving a substantial benefit under the will; that as executor and trustee, with large powers under the will, he comes within the ruling on this point in *Gum* v. *Reep*, 275 Ill. 503. Reep, in that case, was a legatee and also executor and trustee. The court there states (p. 511): "While the share of Thomas P. Reep will not be greatly increased thereby, some benefit to him will accrue. He is also nominated executor and trustee with large powers, among them to hold in trust the share of contestant in the proceeds of the sale of the real estate, loan it and pay the net income, annually, to her until the death of her husband or their divorce and her re-marriage. The land was not to be sold until one year after the death of the testatrix's husband, and until sold it was to be managed and controlled by Thomas P. Reep and the net income divided among the beneficiaries as directed in clause 5, after deducting all expenses, 'including the costs and fees for executing this trust.' In view of the special benefits to and powers conferred upon Thomas P. Reep by the will we are impressed it must be held the case made by the evidence brings it within the rule of the authorities above referred to."

Counsel for plaintiffs in error argue that in this case Benner had greater powers under the will as trustee than did Reep in the case just quoted from; that the will provides that the corporation for the old people's home may be organized whenever the trustees see fit so to do; that nearly five years have passed since the will was made and yet no attempt has been made to incorporate said home. It

is argued, also, that the trustees in this will are given discretion, power and authority to act in any way they see fit in relation to the purchase of the lands and construction of the buildings and everything in connection with the home; that they may appoint their own successors in trust in writing, and are not required to give bond, either as executors or trustees; that they may make whatever expense they may deem necessary for the proper administration of the trust estate and the expense of incorporating, and may pay commissions for collections, counsel fees and railroad fares, and may pay out, from time to time, whatever sums they may think proper or expedient for the management, protection and conservation of the estate under their control, and such expenses so made shall not be questioned by any of the parties in interest; that practically they, alone, are to judge what is reasonable compensation; that they have the right, under the will, to buy and sell real estate, to loan and borrow money, and do anything with the estate money which could have been done by the testator himself.

We find no direct evidence in this record that Benner improperly influenced the testator in drafting this will or to show that Benner was the dominating factor with the testator as to anything except legal questions. The evidence is that when legal points arose the testator always consulted Benner, as his attorney. We find nothing in this record that in any way indicates that Benner attempted to use improper influence upon the testator or that he acted in any improper manner since the will was drafted, either before or after the death of the testator. The sole ground for any claim of improper influence is the fact that he drafted the will and that large powers were given him as one of the trustees thereunder. This court said in *Compher* v. *Browning, supra,* on page 438: "The facts that a confidential agent of a testator or testatrix has drawn the will or procured it to be drawn and has been made executor and trustee thereunder may be suspicious circumstances which call

for additional scrutiny as to the fairness of the transaction, but these facts, alone, do not invalidate the will where all the other circumstances developed by the evidence show that there was no fraud or imposition or attempt to exercise undue influence." (See to the same effect, *Trubey* v. *Richardson,* 224 Ill. 136.) This court in *Weston* v. *Teufel,* 213 Ill. 291, said (p. 299) : "Where a fiduciary relation exists between the testator and a devisee who receives a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator therefore reposes trust and confidence in the devisee as in the ordinary relation of attorney and client, and where the will is written or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary, and this proof, standing alone and undisputed by other proof, entitles contestants to a verdict." This was quoted with approval in *Gum* v. *Reep, supra,* and it was there held that Reep, the trustee, came within that doctrine.

We think the facts in the case of *Gum* v. *Reep, supra,* are more nearly like the facts in this case than any of the others cited, and we are of the opinion that the giving of instruction 14 for defendants in error, in view of these facts, was prejudicial to plaintiffs in error. As was stated by this court in *Gum* v. *Reep, supra,* (p. 511) : "The *prima face* case made by the proof for contestant did not shift the burden of proof to the proponents, but it did require them to rebut the *prima facie* case with some proof. In the end the burden rested upon the contestant to prove the charge in her bill by a preponderance of the evidence, but that rule was complied with unless the *prima facie* case was rebutted by proof."

If there had been any facts proven on this record to show fraud or imposition, undue influence or an attempt to exercise undue influence on the part of Benner, the at-

torney for the testator, then the refusal of instruction 23 would have been error, but, as already stated, we find no proof of any kind of undue influence, or an attempt to exercise any, in drafting the will. There was therefore no evidence upon which to base this instruction, and it was rightly refused.

Objections are made as to other instructions and to certain other questions raised on the record, but we find no reversible error in any of such questions and are of the opinion that they are not of sufficient importance to require a discussion here.

For the errors heretofore noted the decree of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*