IN RE WILL OF GEORGE RICHARDSON.

**WILLS: Testamentary Capacity—Expert Versus Nonexpert Testimony.**
1   Exclusively nonexpert testimony tending to show testamentary capacity may generate a jury question against expert and non- expert testimony tending to show the contrary.

**WILLS: Undue Influence—Mental Characteristics.** A witness qualified
2   by acquaintance or association with a deceased may, on the issue

of undue influence, testify to the mental characteristics of such person, i. e., that deceased was a person of strong will and fixed opinions.

**WILLS: Contest—Inconsequential Testimony.** Inconsequential testimony relative to who should be appointed executor under a will, had with one who *subsequently* instituted a contest of the will, reviewed, and held quite insufficient as a basis for reversible error.

**APPEAL AND ERROR: Harmless Error—Conclusion Without Statement of Fact.** Error may not be predicated on a conclusion statement without a detail of the facts, when the missing facts were later brought out in detail.

**WILLS: Testamentary Capacity—Manner of Talk.** A witness qualified by acquaintance and association with a deceased may be permitted to testify that the statements and answers of deceased in conversation ''were responsive, and in conformity with the matter talked about.''

*Appeal from Harrison District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 31, 1920.

WILL contest decided in favor of proponents. The contestants appeal.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross* and *Frank Tamisiea*, for contestants.

*J. S. Dewell, John P. Organ,* and *Wm. P. Welch*, for proponent.

LADD, J.—I.   George Richardson died on June 19, 1918, at the age of 89 years, lacking 3 days. He was survived by his wife, 10 years younger, 9 daughters, and 4 sons. He settled on a farm in Harrison County in 1856, where he resided until about 1906, after which time he lived in Missouri Valley. In the meantime, he had accumulated an estate valued at $80,000, and this was left to the widow, by will executed June 10, 1918, only 9 days prior to his death. Upon its presentation for probate, two of the daughters, Carrie Fitzgibbon and Hattie Gra-

1. WILLS: testamentary capacity: expert versus nonexpert testimony.

ham, objected, on the grounds of undue influence and mental incompetency. The charge that the will was the product of undue influence was withdrawn by contestants, after all the evidence had been introduced. The decedent had occasionally obtained medicine from Dr. Tamisiea, during several years; but, aside from that, had not been treated by a physician until June 6th preceding his death. He had fallen off a bed that day, and the doctor, being called, diagnosed his case, and concluded that he was afflicted with sclerosis and thrombosis, hardening of the arteries and lime deposits in the cells thereof. This witness and another expert, basing his conclusion on a hypothetical question, were of opinion that decedent, at the time of the signing of the will, was of unsound mind, as were three nonexpert witnesses. On the other hand, ten nonexperts of long and more or less intimate acquaintance were of opinion that he was of sound mind. The existence of disease in the brain of a living being is seldom, if ever, the subject of demonstrated or direct proof. Of necessity, reliance must be placed on outward manifestations, and from these the inference must be drawn as to the condition of the brain. About all courts or juries are able to do, in most cases, is to speak from the evidence as to the probability or improbability that the person under investigation was of unsound mind at the time in question. *State v. Thiele*, 119 Iowa 659. Experience has demonstrated that the opinions of associates and friends of long acquaintance or intimacy, based on showing of facts such as is required, are quite as reliable as, if not more reliable than, the opinions of medical men generally, or even of those making a special study of brain and nerve disorders. We are of opinion that the issue was for the jury.

II. Evidence was received, over objection, that defendant was a man of strong will and of fixed opinions; that, when he made up his mind on a subject, he would not change; as one witness expressed it, "he was very staunch in

2. WILLS: undue influence: mental characteristics.

his ideas," and another, that "he was firm in his opinions." The rulings under which this evidence was admitted are complained of. A person of strong will and tenacious of his opinions is less likely to be led or controlled by another or others than one vacillating in nature, and more readily yielding in his conclusions. A person of intelli-

gence, such as decedent appears to have been, and of positive and independent character, is not likely to be the subject of undue influence,—at least, not as likely as persons of mediocre mentality and of vacillating temperament. This being so, it is of much importance that the jury know the kind of man upon whom the undue influence is said to have been exerted, in determining whether such influence proved effectual and controlling in the execution of the instrument in question. The testimony condemned by the decisions on which appellant seems to rely was as to whether the testator was a man easily influenced (*Lyman v. Kaul*, 275 Ill. 11 [113 N. E. 944]) ; whether the supposed influence sprang from affection or fear (*Carpenter v. Calvert*, 83 Ill. 62) ; whether the testator was "a man easily influenced by others" (*Teter v. Spooner*, 279 Ill. 39 [116 N. E. 673]). . In the last-mentioned case, evidence of the characteristics above mentioned,—that is, that decedent was of positive and decided opinions, and "always had his own idea of things, and was of positive character,"—was held to have been improperly received; and it was said that the witnesses "should not have been called upon to express an opinion on this subject, but should merely give the facts, and let the jury draw the conclusions from such facts." Exclusion of evidence that the testatrix was a person easily influenced, and of evidence as to what extent she had been influenced, was approved, because calling for a conclusion, in *Michael v. Marshall*, 201 Ill. 70 (66 N. E. 273). Much might be said in support of these decisions, other than the ruling in *Teter v. Spooner*, supra; and it is to be observed that no inquiry as to whether decedent was a person easily influenced, was there made. That would seem to be in the nature of an opinion, though the peculiar characteristics of a person are not matters of opinion, but of fact. In *Appeal of Vivian*, 74 Conn. 257 (50 Atl. 797), the court, speaking through Baldwin, J., said :

"The appellee, in rebuttal, called a witness who was a neighbor and familiar acquaintance of Mr. and Mrs. Vivian, and asked her to state 'what the condition of his mind was as to whether he was easily influenced or not,' to which she replied that she 'never thought so.' This was a colloquial mode of stating her opinion as to the testator's mental condition, and

the motion to strike the answer out, on the ground that it was simply an opinion, was properly denied. No question was raised as to the means of observation possessed by the witness. One whose mind is in such a condition that he can be easily influenced is especially liable to be constrained by others to act against his own real wishes. Such a state of mind may be habitual. It may be apparent to those who know him well; and, if so, it is properly the subject of opinion evidence. *Dunham's Appeal,* 27 Conn. 192, 199; *Turner's Appeal,* 72 Conn. 305, 315. If, on the contrary, no such state of mind be apparent to those who would naturally observe it, did it exist, their negative opinion is admissible, for similar reasons.''

See *In Re Sparks' Estate,* 198 Mich. 421 (164 N. W. 267). Such testimony is in the nature of a conclusion, being practically incapable of proof in any other manner. As said in *Yahn v. City of Ottumwa,* 60 Iowa 429:

"It is competent for a witness to testify to his conclusion, when the matter to which the testimony relates cannot be produced or described to the jury precisely as it appeared to the witness at the time.''

This decision has been followed in cases too numerous for citation. A party would experience much difficulty in adducing proof of facts from which the possession of mental characteristics might be inferred, and we are of opinion that those who are qualified from long acquaintance or association may testify to mental characteristics involved in the action.

III. Nina Richardson, one of the daughters of decedent, testified, over objection, that contestants, shortly after the execution of the will, and before beginning the contest, called at 

3. WILLS: contest: inconsequential testimony.

proponent's home, when Mrs. Fitzgibbon suggested that her husband be appointed administrator of the estate; and that, upon objection by Zella Richardson, she remarked, "Well, then, will you have Jack?'' referring to John Graham, the husband of the other contestant,—to which there was no reply, other than the suggestion of proponent that she had four sons of her own. Zella Richardson testified that Mrs. Fitzgibbon said: "I think Mike would make a good one. He has an education, and can settle estates.'' From there on, she testified substantially as

the previous witness.   The suggestion of the appointment of anyone as executor was inconsistent with the rejection of the will, as was sought in contesting its validity; and for that reason, this evidence might have had a remote bearing on the good faith of contestants.   But that was not in issue, further than as it may have borne on their credibility.   Admission of this evidence, then, may not be denounced as erroneous, though of the slightest significance.   An executor had not been nominated in the will, and the good opinion of this woman of her husband and of her sister's husband surely did not detract from the esteem in which the mother held her sons.   The evidence, even though controverted by Mrs. Fitzgibbon, was of no consequence, and could not have been prejudicial.

IV.   David Coulthard, brother of proponent, after testifying to his long acquaintance with decedent, and to having visited him three times, shortly before his death, and that he thought

**4. APPEAL AND ERROR: harmless error: conclusion without statement of fact.**

him of sound mind, and that he comprehended the nature of his business, was asked whether, during any of these visits, decedent "said anything that would indicate to you that he did not have in mind his general relations to his own family."   Over objection, as calling for a conclusion from a conversation not detailed, and incompetent, the witness answered: "No, I don't think he did say a word."   The objection might well have been sustained; but the error, if any, in overruling it was without prejudice, for that counsel for appellant required the witness to relate in detail all that he could remember of what was said at each of the three interviews, and the witness recalled nothing said concerning the decedent's family relations.

V.   Sillsby testified to having been acquainted with decedent many years, and that decedent had spent much time at his banking house, and used to visit on the lawn, until 30 or 40 days

**5. WILLS: testamentary capacity: manner of talk.**

before his death; and was asked, in substance, whether his statements and answers "were responsive, and in conformity with the matter you were talking about."   The objection was overruled, and the witness answered in the affirmative.   Further inquiry was made as to whether anything he said "indicated to you a clogging of his mind, or a misapplication of the usual terms to which they

were referring." Over objection, the witness answered there was none. There was no error. The witness was qualified to express the opinion, as a nonexpert. *In re Estate of Workman*, 174 Iowa 222. Also, see *Yahn v. City of Ottumwa*, supra, and like decisions. The evidence of Barrett and Dr. Tamisiea which had been excluded, in so far as admissible was introduced later. As we discover no reversible errors, the judgment is—*Affirmed*.

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.