---

(No. 12517.—Reversed and remanded.)
JOHN F. SNYDER *et al.* Appellants, *vs.* GEORGE B. STEELE
*et al.* Appellees.

*Opinion filed February 20, 1919.*

1. WILLS—*when witness cannot testify that he signed will in
presence of·testatrix.* In a will contest case, where one of the is-
sues submitted to the jury is whether the will was attested in the
presence of the testatrix, who was in an adjoining room when the
attestation took place, one of the witnesses to the will cannot tes-
tify to his conclusion that he signed in the presence of the testatrix.

2. SAME—*what constitutes attestation in presence of testatrix.*
It is essential to the due attestation of a will under the statute
that both the will and the. witnesses shall be in presence of the
testatrix, so that she may without effort or change of position see

both and the act of attestation; and in a will contest it is erroneous to instruct the jury that it is enough for the testatrix to be able to see the witnesses and enough of the act then being done by them to know that they were signing their names to her will.

3. SAME—*evidence of confidential relation with chief beneficiary, who drew the will, makes prima facie case of undue influence.* Evidence of a confidential relation between the testatrix and a friend who prepared the will or procured its preparation and himself profited substantially by it, standing alone and undisputed on a contest of the will, will sustain the charge that the will was procured by the undue influence of such beneficiary.

4. SAME—*instruction directing verdict should be supported by evidence.* In a will contest case, where one of the issues is whether the execution of the will was the result of undue influence on the part of the chief beneficiary, an instruction directing a verdict should not advise the jury that a *prima facie* case of undue influence may be rebutted by facts and circumstances in the evidence, where there is no evidence to overcome the presumption.

5. SAME—*what questions are not proper in will contest case.* Where one of the grounds upon which a will is contested is undue influence by the chief beneficiary, a witness who has testified in regard to the assets of the estate should not be allowed, over objection, to state on cross-examination that such beneficiary had been attorney and administrator for estates, executor of wills, mayor and city attorney of a certain city, president of a board of education and State's attorney of a certain county, as such facts are not material to the case and the questions not proper cross-examination.

APPEAL from the Circuit Court of Schuyler county; the Hon. HARRY HIGBEE, Judge, presiding.

B. O. WILLARD, and L. A. JARMAN, for appellants.

E. M. WARNER, GLASS & BOTTENBERG, and W. H. DIETERICH, guardian *ad litem,* for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Mary J. Metz died at her home in Rushville, in Schuyler county, on January 12, 1918. On the day before she had signed an instrument which on April 8, 1918, was admitted to probate as her will. Her heirs were a number of cousins, the most of whom joined in a bill to contest

the will. A trial in the circuit court resulted in a verdict in favor of the will and some of the complainants have appealed.

Mary J. Metz was an unmarried woman past seventy years of age who had lived in Rushville practically all of her life. She and her sister, Wilhelmina, also unmarried, lived together until the latter's death more than a year before Mary's death, and after that Mary continued to live alone in the same house which they had occupied, until about two weeks before her death. On December 28, 1917, her physician, Dr. Munson, employed Miss May Peck, a practical nurse, who came into the house, stayed there and cared for Miss Metz until her death. Miss Metz's property consisted of the house in which she lived, another dwelling which was rented, and a store building in the city of Rushville which was also rented, all of the value of about $15,000, and of personal property of about the same value, consisting of notes secured by mortgages on real estate. These securities were in the hands of George B. Steele, a lawyer living in Rushville, who attended to her business, making loans, collecting interest on the notes and collecting rents from the real estate. Miss Metz had been in failing health for some time, was afflicted with a serious disease of the heart and had cancer. She had become very weak, though not confined to her bed until a few days before her death. After Miss Peck came there she never went about the house without Miss Peck's help. She had great difficulty in breathing at times and was not disposed to talk, except when necessary to make known her wants. When she sat erect she had trouble in breathing, and she had sinking spells which occurred at irregular intervals, when she seemed to suffer for breath. She was not visited by her relatives during the time Miss Peck was there and Miss Peck had the sole care of her under the physician's direction. A few days before her death she asked Dr. Munson to send for Charles H. Bartlett, of St. Louis, who was a

287 — 11

second cousin, who visited her occasionally, his last visit before that time having been on Thanksgiving day. Bartlett came to the house from St. Louis about nine o'clock on the morning of January 11, coming in at the kitchen door and going into the room of Miss Metz, where she was lying in bed. He remained there about five minutes, and when he came out asked the nurse if Miss Metz had made a will. He then left the house and returned again about eleven o'clock, when he talked with Miss Metz, Dr. Munson and Miss Peck. He stayed a short time and went away, returning about one o'clock. While he was there, between one and two o'clock, Steele came and had an interview with Miss Metz lasting about an hour. He then left the house and went to his office, where he dictated the will to his stenographer, and arranged with A. P. Rodewald, cashier of the Rushville State Bank, and Guy H. Miller, a clerk in the bank, to go to Miss Metz's house for the purpose of witnessing her will. He returned to the house, taking the will with him. Rodewald and Miller came to the house between four and five o'clock. All three went into Miss Metz's room, where she was lying, propped up in bed. The will was placed before her on a tray and she signed her name to it in the presence of the three. It was then taken into an adjoining room, where Rodewald and Miller signed their names as witnesses. By the will, besides a number of small bequests to various persons, she gave a life estate in her homestead to Margaret Bishop, $1500 to David Jackson, $1500 to the Rushville Methodist Episcopal Church, $1000 for the purpose of caring for the graves of the members of her family, $500 to the Odd Fellows Orphans' Home in Lincoln, $5000 to George B. Steele, $5000 to Charles H. Bartlett and all the residue of her estate to Bartlett. Steele was nominated as executor.

The grounds upon which the will is contested are, that Miss Metz was mentally incapable of making a will; that it was procured by the undue influence of Steele and Bart-

lett, and that it was not attested by the witnesses in the presence of the testatrix.

The court submitted to the jury four questions, namely, whether the instrument in question was the last' will of Mary J. Metz; whether at the time of its execution she was of sound mind and memory; whether she was unduly influenced by the defendants, George B. Steele, Charles H. Bartlett and Margaret Bishop, or either of them, to make the instrument, and whether the instrument was attested in her presence. The jury answered all the questions adversely to the contestants.

So far as the question of mental capacity is concerned, the evidence was sufficient to warrant the verdict of the jury, and no error occurred on the trial which would require a reversal of the decree on that issue.

The proof in regard to the attestation of the will shows that it was signed by Miss Metz while she was lying in bed, with her head and shoulders supported by pillows, which sustained the upper part of her body at an angle of about thirty-five or forty-five degrees. George B. Steele, A. P. Rodewald and Guy H. Miller were present. After the will was signed it was handed to Steele, and he, with Miller and Rodewald, went from the bed-room into the living room, which adjoins it, and there Rodewald sat at a small table on which he signed the will as a witness, then Miller took Rodewald's place at the table and also signed as a witness. This living room was about eighteen feet long east and west by fourteen feet wide. The bed-room in which Miss Metz was lying was immediately north of the east end of it and was eight and one-half feet wide east and west, the east wall of the two rooms being the same. The bed-room was eleven and one-half feet long. At the southwest corner of the bed-room was a door in the south wall opening from the living room. The space between the east side of this door and the east wall of the bed-room was five feet three inches, and in this southeast

corner of the room the bed on which Miss Metz was lying was situated, with the head against the south wall and the side against the east wall of the room. The bed was four and one-half feet wide. Miss Metz was occupying the west side of the bed, leaning back, with pillows at her back and under her head. The table at which the witnesses signed the will was one and one-half feet by two feet in dimensions, and according to the testimony its northwest corner at the time was about six feet east of the west wall and seven feet south of the north wall of the living room. The witnesses sat at the west side of the table, and the will was on the table when they signed it. When the witnesses withdrew from the bed-room with the will Miss Metz was not told they were going into the other room and would sign it there. Rodewald had asked her if it was her will and if she wanted them to witness it, and she answered in the affirmative. Plats were introduced in evidence, the positions and dimensions which have been mentioned were testified to, and it appears from the evidence that a line from the northwest corner of the table through the east edge of the doorway into the bed-room would intersect the west side of the bed twelve inches from the south wall of the bed-room. It would intersect a line a foot east of and parallel with the west side of the bed two feet and one inch north of the south wall of the bed-room and a line two feet and a quarter west of and parallel with the east line of the bed-room, which would be the middle of the bed, three feet and seven inches north of the south wall. Miss Metz was very weak and could not or did not change her position without the assistance of her nurse. The evidence does not indicate that she was unable to turn her head. She was facing north, and from her position on the west half of the bed, reclining on the pillows which supported her shoulders and head, she might perhaps have been able to see the northwest corner of the table by turning her head and looking over her shoulder to the southwest if her head

was more than two feet from the south wall of the room. She could not, however, have seen the table, and it is not clear that she could have seen a man seated at the west side of the table. She could not have seen the will lying on the table and could not have seen the act of attestation. Miller testified when the will was admitted to probate, and the certificate of his testimony was read on the trial of this cause, that while seated at the table he saw Miss Metz's shoulders and the upper part of her body but that he did not see her head. He did answer to the direct question, over the appellants' objection, whether or not he signed the will in the presence of Mary J. Metz, "Yes, sir," but it was error to overrule the objection to this question. The whole issue submitted to the jury on this branch of the case was whether or not the attestation was in the presence of Mary J. Metz, and the witness should not have been permitted to give his judgment as to the determination of the whole issue. His testimony should have been confined to the facts from which the issue was to be determined, and the conclusion to be drawn should have been left to the jury without reference to his opinion. It is essential to the due attestation of a will under the statute that both the will and the witnesses shall be in the presence of the testator, so that he may without effort or change of position see both and the act of attestation. *Quirk* v. *Pierson, (post,* p. 176.)

The following instruction was given to the jury:

"You are further instructed that if you believe from the evidence that at the time of the alleged attestation of Mary J. Metz's alleged will now in dispute, that the alleged witnesses were in an adjoining room to said Mary J. Metz and only a few feet from her, with the view between her and them uninterrupted and they within the range of her vision; and if you further believe from the evidence and all the surrounding circumstances proven upon the trial, in connection with the alleged attestation of said alleged will,

that Mary J. Metz, taking into account her then condition or state of health and her then position as shown by the evidence, either saw, or could have seen had she wished to and had looked in the proper direction, the alleged witnesses themselves and enough of the act then being done by them to know that the alleged witnesses were then signing their names to Mary J. Metz's will, then you should find upon that question that the alleged will in question has been properly attested."

It is not enough for the testator to be able to judge from such act as he may see that the witnesses were signing his will. It is essential to the attestation which the law requires that the testator have the opportunity of seeing the very act of attestation, the will, the witnesses and the act. It was erroneous to instruct the jury that it was enough for the testatrix to be able to see the witnesses and enough of the act then being done by them to know that they were signing their names to her will.

It was also erroneous to give the following instruction, which directs a verdict and ignores the claims of lack of attestation and undue influence:

"The court instructs the jury that if they believe from the evidence that the will in controversy is the will of Mary J. Metz signed and acknowledged by her in the presence of two witnesses, and that such signing and acknowledging was not caused by fraud or compulsion or other improper conduct, you should find the will in controversy is the will of Mary J. Metz."

George B. Steele had for several years had the custody and care of Miss Metz's personal estate and the leasing and management of her real estate. He was not related to her, but she had great confidence in him and said he had been like a brother to her and her sister, Wilhelmina, and she intended to remember him in her will. He came to her, so far as appears from the evidence, without being asked,

when she was lying dangerously ill and only a day before her death, and after a short interview went away and prepared the will in her absence, arranged for the attendance of witnesses whom he selected, and supervised its execution. There is no evidence that it was read to her, though she signed it and said in answer to a question that it was her will. These facts tend to show a fiduciary relation existing between Steele and Miss Metz, which brings the case within the rule that where there was such a confidential relation and the person in whom confidence was reposed prepared the will or procured its preparation and himself profited substantially by it, these facts, standing alone and undisputed, sustain the charge that the will was procured by the undue influence of such beneficiary. (*Gum* v. *Reep,* 275 Ill. 503; *Yess* v. *Yess,* 255 id. 414; *Leonard* v. *Burtle,* 226 id. 422; *Weston* v. *Teufel,* 213 id. 291.) There is no evidence to show that the will was the result of undue influence other than these circumstances, but they are sufficient unless overcome by other evidence. There is evidence of some casual statements of Miss Metz that she did not intend to make a will and of others indicating she did intend to make one, but none recently before her death. The minor bequests of small articles or small sums of money in the will bear evidence that to some extent the will was the expression of the testatrix's wishes. The devise of the life estate to Mrs. Bishop and the bequest and residuary devise to Dr. Bartlett are not subject to the presumption of undue influence, but as to the bequest to Steele the legal presumption of undue influence is in no way rebutted. No one was present at the interview between him and Miss Metz before the will was prepared or heard any part of it except Miss Peck, the nurse, who was in the room a few minutes and heard Steele say, "You had better get somebody else to do this," and Miss Metz answer, "No, I want you to write it," to which he replied, "Well, I receive a per

cent for my services," and she said, "I don't care; I want you to have it." Again, Miss Peck heard him say with reference to Mrs. Potts, whose name was mentioned in the will, "Sallie is not her name, is it?" to which Miss Metz replied, "No, Sarah." These disconnected remarks have no tendency to overcome or sustain the charge of undue influence. The jury were instructed that the *prima facie* case of undue influence might be rebutted by facts and circumstances in evidence, and if, upon a consideration of all the evidence in the case, they believed that the will offered in evidence was the will of Mary J. Metz, and that she voluntarily executed the same without any undue influence on the part of George B. Steele, Charles H. Bartlett or Margaret Bishop, then their verdict upon the question of undue influence should be in favor of the validity of the will. There was no evidence on which to base this instruction. The jury were not referred to any evidence which they might consider as having a tendency to rebut the presumption and there was none. It was error to give the instruction.

On the cross-examination of a witness who testified in regard to the assets of the estate, he was permitted, over the appellants' objection, to state that Steele had been attorney and administrator for estates, executor of wills, mayor and city attorney of the city of Rushville, a member and president of the board of education and State's attorney of Schuyler county. These facts had nothing to do with the case. The questions were not cross-examination and should not have been allowed.

The decree is reversed and the cause remanded.

*Reversed and remanded.*