(No. 13006.—Decree affirmed.)
ORLENA GLADAS CLARKSON, Appellee, *vs.* JOHN KIRTRIGHT *et al.* Appellants.

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. WILLS—*what is essential to attestation in presence of testatrix.* It is essential to a due attestation of the will of a testatrix that both the will and the witnesses shall be in her presence, so that she may, without effort or change of position, see both and the act of attestation.

2. SAME—*whether will is attested in presence of testatrix is a question of fact—burden of proof.* In a will contest case the question whether the will was attested in the presence of the testatrix is one of fact, and the burden of proof on this question rests on the defendants, who are the proponents of the will.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

LOUIS T. GRAHAM, and GOVERT & LANCASTER, for appellants.

291 — 39

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellee.

Mr. CHIEF JUSTICE·DUNN delivered the opinion of the court:

Orlena Gladas Clarkson, by her next friend, filed a bill in the circuit court of Pike county to contest the will of her grandmother, Martha Ann Clarkson, upon the grounds that it was not signed by the testatrix and attested in her presence, that she was of unsound mind and was unduly influenced. The defendants were her nephews and nieces. Issues of fact were made up and the cause was tried. The issue as to the testatrix's signature was withdrawn from the jury and that as to undue influence was found in favor of the defendants, but upon the other issues the jury found that the testatrix was not of sound mind, that the instrument was not attested in her presence and that it was not her will. The defendants have appealed from the decree, which set aside the instrument and its probate.

Martha Ann Clarkson was at the time of the execution of the will a widow about seventy years of age. She had no children living, but appellee, Orlena Gladas Clarkson, was her grand-daughter, the daughter of a deceased son, and her only heir. Mrs. Clarkson had received a part of her property from her deceased husband, and by her will she gave this property to her grand-daughter. She had received other property from a deceased brother, John Walls, and this property she gave to her nephews and nieces, the appellants, who were also nephews and nieces of John Walls. This distribution was in accordance with her previously expressed purpose to return the property to the channel from which it came. She died on Sunday morning, October 7, 1917. On the previous Tuesday she had suffered an attack of tubercular pneumonia. Her attending physician, Dr. R. J. McConnell, called twice on Friday, once in the morning and again at night, when he found her worse and advised her that if she had any business to attend to she

had better do it. She then expressed a desire to make a will, and, there being no lawyer available, a justice of the peace, Mr. Haines, was called from his bed. When he came Mrs. Clarkson gave him the necessary instructions, and he went into an adjoining room, called the "sitting room," to prepare the will, coming back several times for information. Having completed the will he brought it in, with Mrs. Clarkson's name attached to it. Haines read the will, and it was repeated to Mrs. Clarkson, who was very deaf, by Bessie Hunter, a girl seventeen years old, who had been waiting upon Mrs. Clarkson during her sickness and could make herself understood by Mrs. Clarkson better than Haines. Mrs. Clarkson made her mark in the presence of Haines, the doctor, Bessie Hunter and her mother, Mrs. Alice Hunter. The will was then taken into the sitting room and placed upon a small table, where it was signed by the witnesses, R. J. McConnell, Mrs. Alice Hunter and Bessie Hunter. It was Mrs. Clarkson's suggestion that they should be the witnesses. The house had one story. It faced west. The entrance was in the west end of the living room, which was 13 feet 4 inches wide north and south and 15 feet 3 inches long east and west. Directly back of it was the kitchen, which was entered through a door from the living room. South of the living room were two bed-rooms, each opening into it. Mrs. Clarkson was in the east bed-room, which was 9 feet 8½ inches long north and south and 7 feet 5½ inches wide east and west. The bed was 6 feet 5½ inches long and its head was about 6 or 8 inches from the west wall. It was 4 feet 5½ inches wide and in the south part of the room. It does not appear how close to the south wall it was, but a dresser sat in the northwest corner of the room, its length running north and south, and there was space between the dresser and the bed for a chair. Mrs. Clarkson, as she made her mark on the will, was propped in bed on three pillows and her head was about 12 inches from the head of the bed—a distance of from

18 to 20 inches from the west wall. The west side of the door leading to the sitting room was 3 feet 5½ inches from the west wall and 4 feet from the east wall. The table to which the will was taken was 6 feet west of the east wall of the sitting room, which was a continuation of the east wall of the bed-room, so that Mrs. Clarkson from her position could not see the table, for her line of sight through the door was northeast and the table was northwest of the door. Her head being nearly 2 feet west of the door and the east side of the table being 2 feet west of the same door, she could not see the attestation of the will unless she changed her position to do so.

After signing the will Mrs. Clarkson was able to get out of bed and did so with some assistance. None of the witnesses to the will know whether she saw the act of attestation or not. The witnesses testified that the table was about 6 inches west of the east window in the sitting room. There were two windows in the north side of the sitting room, and Bessie Hunter testified that on the day before the will was executed she sat in a chair in front of the east window, about at its center, facing south, and saw Mrs. Clarkson, who was sitting up in bed,—saw her whole body, though she could see no space behind her body. To have been able to do this Mrs. Clarkson's entire body must have been more than 3 feet 5 inches from the west wall of the bed-room, for but 8 inches of the window was east of the west side of the door. The window was 2 feet 2 inches wide and the east side of the table was 6 inches west of it, so that Mrs. Clarkson, sitting in bed as she had sat the previous day, could not have seen the act of attestation. To have seen it she must have been still further toward the foot of the bed. There is no evidence that after signing the will she changed her position so that she could see the attestation. Alonzo Pine, a young man visiting at the house, came into the sitting room from the kitchen while the witnesses were about the table signing the attestation,

and saw Mrs. Clarkson in the bed, leaning on her left fore-arm, which was on the pillows, looking through the door into the sitting room and calling to Bessie, asking if it was time to take her medicine. Pine from his position could see the witnesses and Mrs. Clarkson. He did not testify that Mrs. Clarkson did or could see the witnesses, but only that she was looking north through the door and they were north of her.

It is essential to a due attestation of a will under the statute that both the will and the witnesses shall be in the presence of the testator, so that he may, without effort or change of position, see both and the act of attestation. (*Snyder* v. *Steele,* 287 Ill. 159; *Quirk* v. *Pierson,* 287 id. 176.) Under the evidence it was a question of fact whether the will was attested in the presence of the testatrix, and the burden of proof on this question rested on the defendants, the proponents of the will. The evidence justified the verdict of the jury. No objection is made to the statement of the law on this question as contained in any of the instructions to the jury.

It is argued that the court gave a number of instructions as to the meaning of the phrase, "in the presence of testator," and thereby the jury must have been led to believe that the judge regarded this as the deciding question in the case and the proponents' evidence as insufficient. It is not claimed that the law was incorrectly stated and there was no intimation as to the weight of the evidence.

Since the finding of the jury upon this issue required the decree which was rendered by the court, and since there is no error in the record for which this finding should be set aside, it is not necessary to consider the errors assigned as to other issues.

The decree will be affirmed.               *Decree affirmed.*