(No. 50309.-

*In re* ESTATE OF GENERAL HOBSON MILLSAP.— (William Johnson, Appellant, v. Geraldine G. Wagy *et al.*, Appellees.)

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

GOLDENHERSH, C.J., and MORAN, J., dissenting.

Louis G. Lenard, of Joliet, for appellant.

Douglas L. Ziech, of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Appellees, Geraldine G. Wagy and Patricia Ruth Scott, filed a petition for letters of administration in the circuit court of Will County, alleging that their father, General Hobson Millsap, died intestate. Appellant, William Johnson, filed a petition for letters testamentary, attaching thereto an executed carbon copy of the decedent's will. The court heard arguments on both petitions at the same time, granted the petition of Wagy and Scott, and denied the petition of Johnson. The court found that the original will was under the exclusive control of the decedent, that it was not found at his death and was therefore presumed revoked, and that no evidence was produced to rebut the presumption. The court accordingly ruled that the copy offered by Johnson could not be admitted to probate. Johnson appealed, and the appellate court affirmed (55 Ill. App. 3d 749). We allowed his petition for leave to appeal under Supreme Court Rule 315 (65 Ill. 2d R. 315).

The will offered by appellant Johnson devised and bequeathed all of the decedent's property to Johnson and his wife, and designated Johnson as executor, to be succeeded by his wife in the event that Johnson did not serve. Pursuant to section 6—7(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 6—7(a), current version at Ill. Rev. Stat. 1977, ch. 110½, par. 6—7(a)), a hearing was held to determine whether the will should be

probated. On cross-examination of an attesting witness, it was revealed that the decedent had declared that he would retain the original will in his safety deposit box. A carbon copy was executed and retained by appellant Johnson. At the decedent's death, the original could not be found. Appellant Johnson offered the copy for probate, which was denied on the basis of the presumption of revocation that arises when a will is retained by the decedent after its execution, but cannot be found at his death. See *In re Estate of Moos* (1953), 414 Ill. 54, 57.

Appellant Johnson contends that the issue of presumed revocation may not be raised under section 6—7(a) because that section is limited in scope. It is argued that the drafters of the law intended that a probate court conducting a hearing under section 6—7(a) should only consider the testimony of attesting witnesses as to whether the will was executed with the requisite testamentary formalities, and any evidence of fraud, forgery, compulsion, or other invalidating conduct. Appellant Johnson has also conceded at oral argument that a probate court may also consider other evidence establishing revocation as a matter of law. Appellant contends that the presumption of revocation may only be raised in a will contest, apparently on the belief that this presumption is not a matter of law competently adjudicated in proceedings under section 6—7(a).

Close consideration of the argument leads us to conclude that adoption of appellant's analysis of section 6—7(a) would unnecessarily limit the scope of proceedings under that section. The statute provides in pertinent part:

"(a) When each of 2 attesting witnesses to a will testifies that (1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and

memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will in chancery. If the proponent establishes the will by sufficient competent evidence, it shall be admitted to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will." (Ill. Rev. Stat. 1975, ch. 3, par. 6—7(a).)

Contrary to appellant's argument, we feel that evidence giving rise to a presumption of revocation may be presented in probate court proceedings under section 6—7(a), and that a party is not limited to a will contest if he desires to produce such evidence. Probate courts have long had the power "to hear testimony on the question of revocation and to deny probate where it appears that the alleged will is no will at all by reason of revocation." *In re Estate of Holmberg* (1948), 400 Ill. 366, 369, citing *Research Hospital v. Continental Illinois Bank & Trust Co.* (1933), 352 Ill. 510; see also *In re Estate of Moos* (1953), 414 Ill. 54; *Bley v. Luebeck* (1941), 377 Ill. 50.

The *Bley* case is most instructive in this matter. The case involved an appeal from a circuit court decree admitting to probate a copy of a lost will. Rules of probate practice in effect at the time required that a petition to probate a will be filed in the county court with right of appeal to the circuit court. The court's opinion traced the history of probate practice and included a discussion of a statute, section 71 of the Probate Act of 1939, identical in material respects to the statute now before us, section 6—7(a) of the Probate Act of 1975:

"In 1939, the legislature passed an act designated by short title as the Probate act. This act was a complete revision of the statutes

relating to the administration of estates, including the probate of wills. All other statutes on the subject, including chapter 148, which is the act of 1874 relating to wills, were expressly repealed. Section 71 of the Probate act (Ill. Rev. Stat. 1939, chap. 3, par. 223) was substituted for section 13 of the chapter on wills, but the language was materially changed. That section, as reenacted as section 71 of the Probate act, preserves and continues the right of the proponent to offer additional evidence on an appeal to the circuit court as such right existed under section 13 of the act relating to wills. \*\*\* '\*\*\* If the proponent establishes the will by sufficient competent evidence it shall be admitted to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which, in the opinion of the court, is deemed sufficient to invalidate or destroy the will.' \*\*\*

\* \* \*

In a case where the will is lost and is not in existence, proof may be offered on the additional issue of the loss or destruction of the will and its contents.

\*\*\* In the case of a lost will, which is not in existence, the issues to be tried by the county court are necessarily broadened. In such case the county court must hear proof of the due execution of the will and the sanity of the testator and any evidence of fraud, forgery, compulsion, or other improper conduct, the same as in cases where the will is in existence; but where the will is lost, proof that the will has been lost, or destroyed, and that it was not revoked by the testator in his lifetime must also be made. \*\*\* There is nothing in the statute which limits the

evidence on these additional issues to the subscribing witnesses either on the hearing in the county court, or on appeal to the circuit court. *** Upon the hearing of an appeal from an order of the county court, either admitting or denying probate of a lost will, the circuit court is required to pass upon the issues of loss, or destruction, of the will; that it was in existence at the time of the testator's death and had not been revoked by him in his lifetime." *Bley v. Luebeck* (1941), 377 Ill. 50, 56-57, 62-64.

Even cases cited by appellant recognize the power of a court to deny admission of a revoked will in probate proceedings. *In re Estate of Marcucci* (1973), 54 Ill. 2d 266, 270, for example, stated, "The usual issue presented at such proceedings is a determination of which is the last, valid, *unrevoked* will of the testator." (Emphasis added.)

Appellant had cited *Marcucci* and other cases (see, e.g., *Ruffing v. Glissendorf* (1968), 41 Ill. 2d 412; *Shepherd v. Yokum* (1926), 323 Ill. 328; *In re Estate of Parker* (1976), 42 Ill. App. 3d 860) for the proposition that a probate court may consider only the testimony of attesting witnesses as to proper execution and testamentary capacity, and evidence of fraud, forgery, compulsion or other invalidating conduct. Appellant has also conceded at oral argument that a probate court may also deny probate where there is revocation as a matter of law. We agree with the law set forth by appellant, but disagree as to its applicability in the case now before us. Because, as a matter of law, a probate court will not admit a revoked will (*Research Hospital v. Continental Illinois Bank & Trust Co.* (1933), 352 Ill. 510, 521), the presumption of revocation may be the basis of a probate court's denial of admission. Appellant's misplaced reliance on *Marcucci* and the other cases cited apparently stems from the courts' holdings in those cases that the issues there presented were

not susceptible to resolution in proceedings to probate a will. In *Marcucci,* for example, this court held that the validity of a contract not to revoke could not be adjudicated in proceedings to probate a will. The court said, "Any attempt to prove the existence of a contract not to revoke at such proceedings is irrelevant since it is tantamount to an attempt to prove a contractual claim against the estate before the appointment of an indispensable party, the executor." (*In re Estate of Marcucci* (1973), 54 Ill. 2d 266, 270.) The issue presented here, however, is one that may be properly determined by a probate court in proceedings under section 6—7(a), and in this respect the present case differs from those cited by appellant.

Once it appears that the will was under the exclusive control of the decedent, and that the will cannot be found and offered for probate, it is presumed that it was revoked, even if an executed copy is found. (*In re Estate of Holmberg* (1948), 400 Ill. 366, 371.) The presumption arises as a matter of law, and a probate court must give effect to the presumption if the necessary evidence is brought to the attention of the court and no rebuttal evidence is admitted to overcome the presumption. If the proponent of the will has not presented such rebuttal evidence, it cannot be said that he has produced "sufficient competent evidence" within the meaning of section 6—7(a) to have the will admitted. Appellant's disregard of this proof requirement and his failure to recognize that the presumption of revocation operates as a matter of law render his analysis of section 6—7(a) incomplete.

Appellant argues, however, that section 6—7(a) cannot constitutionally accommodate a challenge of this nature whereby a party alleges that a will is presumed revoked. It is appellant's contention that the rights of interested parties are cut off without notice of the proceedings, opportunity to be heard, and the option of a jury trial. In

light of the requirements of section 6—4(a) that heirs and legatees receive notice of proceedings to admit a will to probate (Ill. Rev. Stat. 1975, ch. 3, par. 6—4(a)), we find it difficult to understand how appellant can complain of a failure of the Probate Act to require notice and opportunity to be heard. In any event, we feel that appellant is without standing to make this argument. Two reasons for this appear. First, section 6—4(b) provides that a party who appears in probate proceedings need not be given notice. (Ill. Rev. Stat. 1975, ch. 3, par. 6—4(b).) Appellant commenced these proceedings, appeared, and therefore was not entitled to notice. Since he was not entitled to notice, he may not complain of a failure to require that notice be given to others. Second, because he did have notice of the proceedings, appellant may not complain that others were not notified. *In re Estate of Meskimen* (1968), 39 Ill. 2d 415, 422-23.

It is also appellant's contention that the rights of interested parties are not adequately protected because section 6—7(a) does not afford the option of trial by jury. Though we see no problem with appellant's standing to raise this issue, we find no merit in the argument. The constitutional right to trial by jury does not extend to actions unknown at common law, such as statutory proceedings to admit a will to probate. (*Research Hospital v. Continental Illinois Bank & Trust Co.* (1933), 352 Ill. 510, 521-22; *Moody v. Found* (1904), 208 Ill. 78, 79-80.) The question of whether a will should be probated is a question for the court and not for the jury. *Schofield v. Thomas* (1908), 236 Ill. 417, 428; *Schofield v. Thomas* (1907), 231 Ill. 114, 119.

Having determined that a probate court may properly consider the issue of presumed revocation in proceedings under section 6—7(a), we turn to the question of whether the courts below properly ruled that the will of General Hobson Millsap was revoked. The probate court found,

and the appellate court agreed, that the presumption of revocation was raised and unrebutted.

Due to the strength of the evidence which gave rise to the presumption, as well as the strength of corroborating evidence, we conclude that the probate and appellate courts did not err in ruling that the presumption was raised. Testimony elicited before the probate court showed that the decedent had retained the original will, and that it could not be found at his death, thereby raising the presumption of revocation. Corroborating testimony was presented that the decedent had expressed his intention to have his property distributed to his children and not according to the will's provisions. Due to the absence of rebuttal evidence, we also agree that the probate and appellate courts did not err in holding that the presumption was not overcome.

In reaching the conclusion that the will of General Hobson Millsap was revoked, we are not unmindful of the fact that the copy offered for probate was executed. If an unrebutted presumption of revocation is to be given the full legal effect to which it is entitled, it must be held that no document, executed or unexecuted, may be probated. To allow probate of such a document would create an unwarranted exception to the rule that a will which is presumed revoked may not be admitted, and would not give proper recognition to the purpose of the rule. The presumption was adopted to conform the law of wills to common experience. As Page states in his treatise, the presumption of revocation "has been adopted as the rule which conforms most of the actual facts of human life. While wills are occasionally destroyed by disinherited heirs, they are much more frequently destroyed by testator, with the intention of revoking them. This presumption, therefore, takes the normal case as the standard, and requires affirmative evidence of the abnormal case." (3 W. Bowe & D. Parker, Page on Wills sec.

29.139, at 697-98 (rev. ed. 1961).) We see no reason why this purpose should not be given effect in the present case, where an executed document is found and offered for probate without explanation of the failure to produce the document retained by the decedent. As Atkinson indicates in his treatise, the very nature of duplicate wills advises against admission of even an executed copy where the document retained by the decedent is revoked by mutilation or by virtue of the presumption of revocation. The author writes:

> "A will executed in duplicate is totally revoked by the testator's mutilation of one of the duplicates with the required intent. [Citing, *inter alia, In re Estate of Holmberg* (1948), 400 Ill. 366.] This follows from the nature of duplicate wills, either copy being regarded as the will so that revocation may be by physical act to either one of them. The presumption of revocation from the non-production of the will which was in testator's possession, or its production in a mutilated condition applies in the case of duplicate wills. As a result all duplicate copies in the testator's possession must be produced intact, or the loss or mutilated condition explained, in order to obtain probate. Thus, the practice of executing wills in duplicate, often thought to be a safeguard against loss or fraudulent destruction, may prove to be a boomerang when the situation gives rise to the presumption of revocation and there is not sufficient evidence to overcome it." T. Atkinson, Wills sec. 86, at 442-43 (2d ed. 1953).

In summary, we hold that no statutory or constitutional restrictions prevent a probate court from considering the presumption of revocation in proceedings under section 6—7(a) of the Probate Act of 1975, and that the courts below properly ruled that the will of General Hobson Millsap was revoked. For these reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. CHIEF JUSTICE GOLDENHERSH, dissenting:

I dissent. The effect of the majority opinion is to deprive the proponents of the will of an opportunity to litigate the question whether the failure to find the copy of the will in the testator's possession revoked the will. Only one case cited by the majority (*In re Estate of Holmberg* (1948), 400 Ill. 366) involved fully executed duplicate copies of the will. In *Holmberg* the word "Void," admittedly in the testatrix's handwriting, and her signature, admittedly genuine, were written across the carbon copy found in her possession. None of the other authorities involved fully executed copies and are clearly distinguishable from this case. Here, there are admittedly duplicate originals of the will fully executed and properly witnessed.

Unlike the presumption which arises from the mutilation, destruction or modification of a will which, as a matter of law, effects revocation, the failure to produce the document which is one of several fully executed copies of a will gives rise only to an inference of fact, and the proponent of the will is entitled to adduce evidence which overcomes the inference that revocation was intended. Under these circumstances, whether revocation was intended is an issue of fact, triable to a jury. (*Harris v. Etienne* (1925), 315 Ill. 540; *Clarkson v. Kirtright* (1920), 291 Ill. 609.) Here the opponents of the will were not required to file any pleadings which in any manner delineated the issues, and the injustice effected by the majority opinion is that the proponent was given no opportunity to try the key issue in the case. The requirement of a pleading and the framing of issues would enable the use of appropriate discovery procedures to determine what had happened to the document which was in testator's possession, and to determine whether his failure to have it in his possession resulted from his intent to effect a revocation.

MR. JUSTICE MORAN joins in this dissent.