ETHEL C. GUM, Appellee, vs. THOMAS P. REEP et al.
Appellants.

*Opinion filed October 24, 1916—Rehearing denied Dec. 8, 1916.*

1. WILLS—*what proof establishes prima facie case of undue influence.* Evidence that a fiduciary relation exists between the testator and a devisee who receives a substantial benefit from the will; that the testator is the dependent and the devisee the dominant party; that the testator reposes trust and confidence in the devisee, and that the will was written or its preparation procured by that beneficiary, establishes, *prima facie,* the charge of undue influence exercised by the beneficiary, and, standing alone and undisputed, entitles the contestants to a verdict.

2. SAME—*what is a substantial benefit to devisee.* Even though the beneficiary charged with undue influence receives only an equal share of the estate with the others, yet if certain advancements are charged against the shares of some of the children and said beneficiary is also nominated executor and trustee with large powers, including the power to manage and control all the real estate until the death of the testator's husband and to hold in trust the share of one devisee in the proceeds of the sale of the realty, to loan her share and pay the net income, annually, to her until her husband's death or their divorce or her re-marriage, and to deduct all expenses of administration, including the costs and fees for executing the trusts, he will be regarded as receiving such a substantial benefit as to make a *prima facie* case of undue influence requiring some proof to rebut it.

3. SAME—*charge of undue influence must be proved by a preponderance of the evidence—burden of proof.* In a will contest case the burden rests upon the contestant to prove a charge of undue influence by a preponderance of the evidence, and although, when a *prima facie* case is made, the burden of proof does not shift to the proponents of the will, yet they must rebut the *prima facie* case with some proof.

4. SAME—*when strict scrutiny and proof of volition of testatrix is required.* Where, on account of age and long and severe illness, a testatrix is more susceptible to undue influence and imposition than if she had been physically sound and strong and where the will is written by one who is substantially benefited by it, strict scrutiny and proof of volition are required, and the court or jury must be fully satisfied that the testatrix was not imposed upon but knew what she was doing and what disposition she was making of her property when she made the will.

APPEAL from the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

SMOOT & LANING, for appellants.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree entered in a will contest case in which the will was set aside as not being the act and deed of the testatrix, Anna B. Reep, who died February 9, 1915, leaving the instrument contested purporting to be her last will and testament executed February 24, 1914.

The testatrix left surviving her a husband, Eli Reep; also her children, Nannie B. Gum, Thomas P. Reep, Martha A. Clark, Alice Maud Batterton, Mary A. Gaddie, Ethel C. Gum and Edward L. Reep; also Ely Reep, her granddaughter, the only child of a deceased son. Stripped of unnecessary verbiage, the will, after directing the payment of the debts and funeral expenses and the purchase of a marker for testatrix's grave at a cost not to exceed $300, directs that the remaining personal estate be converted into money by the executor,—one-third of the proceeds to be paid to her husband and the balance divided equally among her children then living and the said grandchild, Ely Reep. The fourth clause of the will recites the testatrix had paid out more money for the education of her daughter Ethel (complainant in the bill to contest the will) than for her other children; that she had loaned and given considerable more money to her son Edward than to the other children; that she had given her daughter Nannie B. Gum money for the education of said daughter's son and to start him in business, and not having so favored her other children or grandchild and desiring them to share equally in her estate, she charged against her daughter Ethel C. Gum the sum of

$500, with interest at six per cent from the date of the execution of the will; against her son Edward L. the sum of $500, with interest at the same rate from the same time; and against her daughter Nannie B. Gum the amount of money the testatrix had paid and might thereafter pay on a policy of insurance in the Illinois Life Insurance Company upon the life of the daughter's son, Percy E. Gum, which policy she directed should be transferred to the said daughter Nannie B. Gum, as beneficiary, upon the books of the company. None of the advancements charged were to be deducted from the personal estate but were to be paid out of the proceeds of the sale of the testatrix's land when sold, in accordance with the directions in the will. The will directed the real estate of testatrix should not be sold or disposed of until after the death of her husband, but until that time it should be held by the executor in trust and managed and controlled by him, the rents, income and profits therefrom collected by him, and after the payment of the taxes, repairs, insurance and all other expenses, including his costs as trustee, the net amount was directed to be paid, yearly, one-third to the husband as long as he lived, and the balance divided equally among the testatrix's children and grandchild, Ely Reep. Within one year after the death of the husband the executor was directed to sell the real estate at public sale and was authorized to execute deeds of conveyance to the purchasers thereof, and the proceeds, after the payment of the costs, together with the advancements charged against the testatrix's children, were to be divided equally among her children and the said grandchild, except that the share of the daughter Ethel C. Gum was to be held in trust by the executor, loaned on good security and the net income therefrom paid to said daughter Ethel so long as she was the wife of Chester Gum; that upon his death, if the daughter was then living, or upon her divorce from him and marriage to another, the executor was given authority to pay the daughter the principal sum

or such part thereof as he deemed necessary and proper for her needs and well being; that if any of such principal sum remained unpaid to her at her death it was to be paid to the heirs of her body surviving her, and in case she left no such heirs it was to be divided among the testatrix's heirs then living, in accordance with the statutes of descent. The will named the testatrix's son Thomas P. Reep as executor, who was also given trust powers, and revoked all wills theretofore made by her. It was witnessed by Harry Schirding, James H. Gum, Hye Dorn and Lizzie Luken. The will was admitted to probate in March, 1915.

The bill in this case to contest the will was filed by the daughter Ethel C. Gum in September, 1915. It charges that at the time of the execution of the will the testatrix was sixty-five years old and suffering from disease and weakness incident to old age; that she had been confined to her bed with a fatal malady from which she had been suffering for ten years and was not of sound mind, and was unable to comprehend the terms and provisions of the will and was mentally incapable of making a just and valid disposition of her property. The bill also charges the will was wholly the product of the son Thomas P. Reep and was not the will of the testatrix; that said son was a practicing lawyer; that he had for a long time been unfriendly to complainant and his brother Edward; that for improper and fraudulent purposes said Thomas P. took advantage of the ailing and mental condition of his mother, prepared the instrument purporting to be her will agreeable to his own wishes and desires, procured the witnesses to it and unduly influenced the testatrix to execute the same; that he was present at the time of its execution, which he controlled and managed; that a confidential relation existed between Thomas P. and the testatrix, because of which she was, at the time of the execution of the instrument, under improper restraint and undue influence of said Thomas P., who procured the execution of the instrument as the will of Anna

B. Reep, and alleges the same was not her will but was the will of her son Thomas P. Reep.

Thomas P. Reep answered the bill, individually and as executor. Martha A. Clark, a daughter, filed her separate answer, and the guardian *ad litem* for the grandchild, who was a minor, filed an answer. All of the other defendants were defaulted. The answers of Thomas P. Reep and Martha A. Clark denied the allegations of the bill that the testatrix was not of sound mind and memory and that the will was procured through the undue influence of the son Thomas P. and alleged it was the will of the testatrix.

Upon replications filed, issues were made up and submitted to the jury whether the writing purporting to be the last will and testament of Anna B. Reep was her last will, whether at the time of its execution she was of sound mind and memory, and whether she was unduly influenced by Thomas P. Reep to make said will. A trial was had by jury and a verdict returned finding the instrument purporting to be the last will and testament of Anna B. Reep was not her last will and testament. The verdict further recited the jury found that the testatrix was of sound mind and memory but that she was unduly influenced by Thomas P. Reep to make the will. The chancellor entered a decree in accordance with the verdict of the jury, finding the instrument offered in evidence as the last will and testament of Anna B. Reep was not her will and setting the same aside and the probate thereof. From that decree Thomas P. Reep, individually and as executor, and Martha A. Clark, have prosecuted this appeal.

The errors assigned and argued in the briefs are that the verdict is palpably contrary to the evidence; that the court erred in giving one instruction on behalf of the contestants and refusing one instruction asked on behalf of the proponents of the will.

Anna B. Reep was at the time of her death about sixty-five years of age. She owned 160 acres of farming land in

Menard county and money to the amount of about $1200. She had inherited the land from her father, and together with her husband and family had resided on the farm many years. In January, 1913, she left the farm and went to Petersburg, Menard county, where she lived at the Smoot Hotel until after the will was executed. Her husband appears to have left the home and family prior to the time Mrs. Reep went to live in Petersburg. Before going there she had a sale and sold off her personal property. She lived at the Smoot Hotel, in Petersburg, until April 1, 1914, when she went to visit her daughter Martha A. Clark in Arkansas, where she remained until her death, February 9, 1915. Mrs. Reep had suffered from valvular heart disease and a tendency to dropsical conditions for several years before her death. At times she would be very ill and suffer greatly. When suffering from these acute attacks she was unable to be around. As we understand the record, before she was incapacitated by age and disease from doing so she largely managed and controlled the business of conducting her farm. The evidence upon the issue of her mental capacity was conflicting. A considerable number of witnesses testified that she was, in their opinion, of unsound mind, and a considerable number testified that she was of sound mind. The jury found that she was of sound mind, and the correctness of that finding is not questioned by the assignment of cross-errors.

The decree adjudging the instrument offered as the will of Anna B. Reep was not her last will and setting aside the probate thereof was based upon the finding of the jury that she was unduly influenced to make it by Thomas P. Reep. He was called as a witness by the contestant. He is an attorney at law practicing in Petersburg. He testified he prepared the will at his mother's direction; that he made a draft of it with lead pencil from notes made at his mother's room in the Smoot Hotel and submitted it to her two days before it was executed; that he afterwards had it typewrit-

ten, took it to his mother, read it to her carefully, left it with her and at her request arranged to come back the next forenoon; that he does not remember whether anyone was present in the room when he read the will to his mother.

The contestant contends that the proof established a relation of trust and confidence between the testatrix and Thomas P. Reep; that he procured her to make the will, prepared it himself, secured the witnesses to come to his mother's room to attest it, and in and by the will took advantage of the fiduciary relation existing between him and his mother to procure his nomination as executor and trustee with large discretionary powers, and caused advancements to be charged against appellee, resulting largely to his advantage.

There were four witnesses to the will. They were requested to come to the testatrix's room at the hotel to attest the will as witnesses by Thomas P. Reep. They appear to have gone to Mrs. Reep's room at about the same time but did not all go together. As some of them were going into the testatrix's room Thomas was passing out and said he would return quickly. He did so within a few minutes. She signed the will in the presence of the witnesses and they each signed in her presence. She told them she had made her will and wanted them to sign as witnesses. Three of the witnesses to the will testified the testatrix had it in her possession when they went to her room. They all testified that when Thomas came in the room, and before the will was signed, he asked his mother if it was her will and if she wanted the parties present to sign as witnesses, and she answered she did; that he prepared it for her signature and told her where to sign it. One of the witnesses to the will testified that when Thomas came into the room he took the will out of his pocket and asked testatrix if it was her will and if she wanted the parties present to sign it. At the time the will was executed the testatrix was lying on the bed in her night dress or a wrapper. The physician

o

who treated her testified she was quite ill in February, 1914.
She was raised up in bed, the will was placed on a book,
and she was given a pen, with which she signed it. It was
afterwards signed by the four witnesses in her presence. In
addition to the usual recital in the attestation clause that the
witnesses believed the testatrix to be of sound mind and
memory, it contained the further recital that "we saw no
indication of and believe there was no undue influence ex-
ercised over her in the execution thereof."

The evidence tended to show, and was not contradicted,
that Thomas sustained a fiduciary relation toward testatrix.
He transacted business for her as her agent and attorney,
and that she reposed confidence in him was evidenced by
the fact that she instructed the bank where she deposited
her money to honor checks on her account signed by him
as her agent. "Where a fiduciary relation exists between
the testator and a devisee who receives a substantial bene-
fit from the will, and where the testator is the dependent
and the devisee the dominant party, and the testator there-
fore reposes trust and confidence in the devisee, as in the
ordinary relation of attorney and client, and where the will
is written or its preparation procured by that beneficiary,
proof of these facts establishes *prima facie* the charge that
the execution of the will was the result of undue influence
exercised by that beneficiary, and this proof, standing alone
and undisputed by other proof, entitles contestants to a
verdict." *Weston* v. *Teufel,* 213 Ill. 291, and cases there
cited. See, also, *Leonard* v. *Burtle,* 226 Ill. 422; *Yess* v.
*Yess,* 255 id. 414; *England* v. *Fawbush,* 204 id. 384.

It is insisted by appellants that the evidence does not
bring the case within the rule announced in the cases above
cited, for the reason that Thomas P. Reep received no spe-
cial benefit from the will above what the other children re-
ceived; that the will divided the testatrix's property equally
among her children and the grandchild, who was the only
child of a deceased son, except as to the advancements

charged against the share of the contestant and two other children, to be paid out of the proceeds of the sale of the real estate. In such case, it is contended, the evidence does not make a *prima facie* case requiring proof to rebut it. The only inequality in amount between the devise for the use and benefit of contestant and the devise to Thomas P. Reep is the benefit the latter will receive from the advancements charged against the share of the former. It is claimed by appellants no substantial advantage results from that source. While the share of Thomas P. Reep will not be greatly increased thereby, some benefit to him will accrue. He is also nominated executor and trustee with large powers, among them to hold in trust the share of contestant in the proceeds of the sale of the real estate, loan it and pay the net income, annually, to her until the death of her husband or their divorce and her re-marriage. The land was not to be sold until one year after the death of testatrix's husband, and until sold it was to be managed and controlled by Thomas P. Reep and the net income divided among the beneficiaries as directed in clause 5, after deducting all expenses, "including the costs and fees for executing this trust."

In view of the special benefits to and powers conferred upon Thomas P. Reep by the will, we are impressed it must be held the case made by the evidence brings it within the rule of the authorities above referred to. The *prima facie* case made by the proof for contestant did not shift the burden of proof to the proponents, but it did require them to rebut the *prima facie* case with some proof. In the end the burden rested upon contestant to prove the charge in her bill by a preponderance of the evidence, but that rule was complied with unless the *prima facie* case was rebutted by proof. There was no attempt to rebut the proof of the facts relied upon by contestant to support the claim that a fiduciary relation existed between the son Thomas and the testatrix, nor do we understand the sufficiency of the proof

to show the existence of such relation is denied. The contention rather is, that notwithstanding such relation existed, as we have before said, and for the reasons there stated, the evidence in this particular case did not make a *prima facie* case of undue influence requiring contradiction on the part of proponents; also, it is further contended by proponents that proof of statements made by the testatrix before the will was made, and statements after its execution, as to what disposition she would make and had made of her property, and her reasons therefor, rebut any presumption that she was unduly influenced.

Before testatrix left the farm, contestant and her husband were visiting for some time at the testatrix's house. While they were there testatrix and contestant's husband had a quarrel about the treatment by testatrix's son-in-law of a young son of Thomas P. Reep, who also appears to have been a visitor at his grandmother's. It was testified on behalf of proponents that the testatrix told her son-in-law he should not have any of the fruit she and her daughter were putting up, to which he replied in a vulgar and offensive manner, and after that the testatrix told some parties her son-in-law should never have any of her property; also that after the will was made she said she had arranged her property so her son-in-law would not get any of it. There is no proof of any dispute or misunderstanding between testatrix and contestant. On the contrary, there is evidence tending to show contestant, who was her youngest daughter, was also the favorite of her mother. The proof tends to show that Thomas P. Reep became angry at his brother-in-law and made threats of violence against him on account of the difficulty between the brother-in-law and Thomas' son. The proof clearly shows that at and for some time before the will was made testatrix was physically in a weakened condition from age and serious illness. A number of witnesses testified her mind also was unsound, but we think the jury were warranted in finding she pos-

sessed testamentary capacity. It cannot be denied, however, that on account of her age and long and severe illness she was more susceptible to undue influence and imposition than if she had been physically sound and strong, and in such case, when the will is written by one who is substantially benefited by it, stricter scrutiny and proof of volition will be required. (*Purdy* v. *Hall*, 134 Ill. 298.) "Where a will is written, or procured to be written, by a person largely benefited by it, such circumstance excites stricter scrutiny and requires stricter proof of volition and capacity. The proof required in such cases must be such as to fully satisfy the court or jury that the testator was not imposed upon but knew what he was doing and what disposition he was making of his property when he made his will. The active agency of the beneficiary of a will in procuring it to be drawn, especially in the absence of those who have at least equal claims upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance which indicates the probable exercise of undue influence. Where the mind is wearied and debilitated by long continued and serious and painful sickness it is susceptible to undue influence and is liable to be imposed upon by fraud and misrepresentation. 'The feebler the mind of the testator, no matter from what cause,—whether from sickness or otherwise,—the less evidence will be required to invalidate the will of such person.' " *England* v. *Fawbush, supra,* p. 392.

A consideration of the evidence in the record leads us to the conclusion that we would not be justified in reversing the decree on the ground that it is palpably contrary to the weight of the testimony. The language of the opinion in *Keyes* v. *Kimmel,* 186 Ill. 109, on page 121, is applicable to this case. Neither do we find any error of law in the court's rulings in giving and refusing instructions, prejudicial to proponents.

The decree is affirmed.                    *Decree affirmed.*