# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 15483.—Reversed and remanded.)

WALTER E. POND *et al.* Appellees, *vs.* RHODERICK P. HOL-
LETT, Exr., Appellant.

*Opinion filed October 20, 1923—Rehearing denied Dec. 7, 1923.*

1. WILLS—*mere existence of confidential relation does not raise
presumption of undue influence.* A confidential relation existing
between a testatrix and another person must, in order to create a
presumption of undue influence, be used for the purpose of pro-
curing the making of the will to the advantage of such person
and be such as to destroy the freedom of the will and purpose of
the testatrix.

2. SAME—*what does not make the executor a beneficiary.* A
provision in a will that in case the named executor shall act as
attorney or counselor for the executor or trustee he shall receive
such additional compensation for his services as such attorney and
counselor as may be just and equitable, does not make the execu-
tor a beneficiary under the will.

3. SAME—*executor not a beneficiary because of the rank and
standing the appointment gives him.* The fact that the appoint-
ment of an executor may confer upon him rank and standing in
the community or in business relations generally, does not make
him a beneficiary in the sense that such appointment, in connection
with the fact that he stood in a confidential relation to the testa-
trix, will raise a presumption of undue influence.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, persiding.

L. E. SAUTER, for appellant.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, and HARRIS F. WILLIAMS, (WEYMOUTH KIRKLAND, and JAY STOUGH, of counsel,) for appellees.

DAVID R. CLARKE, guardian *ad litem.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Sarah A. Pond died on July 11, 1919, leaving a last will and testament executed on November 22, 1917, which was admitted to probate in the probate court of Cook county on September 15, 1919. She left the appellees, Walter E. Pond and Lillie P. Holmes, her son and daughter, her only heirs-at-law, and they filed their bill in this case in the circuit court of Cook county on September 14, 1920, against the appellant, Rhoderick P. Hollett, executor of the will, the Wesley Memorial Hospital, Mildred L. Holmes King, the daughter of Lillie P. Holmes, and Barbara L. King, a minor child of Mrs. King, the only lineal descendants of the testatrix. The bill prayed for an issue of law to be made whether the instrument in question was the last will and testament of Mrs. Pond and that the same should be set aside, and the sole and only charge made to invalidate the will was the alleged exercise of undue influence by Hollett, who was appointed executor and trustee. A guardian *ad litem* was appointed for the minor and filed a formal answer. Hollett, executor, answered denying the exercise of undue influence, and the issue was submitted to a jury. The verdict was that the instrument was not the last will and testament of Mrs. Pond and a decree was entered setting it aside, from which the executor appealed.

The verdict, which was reached and returned under misinformation by the court as to the law, had no basis in the evidence and the decree was contrary to the law and evidence. The bill made no charge of a want of testamentary capacity, and it was stipulated that no claim of that kind was made, and that the only relation which the mental condition of Mrs. Pond had to the issue was her susceptibility to influence by the executor on account of her general mental condition.

The following facts were proved and there was no evidence to the contrary: Walter M. Pond, husband of Sarah A. Pond, dropped dead in a hotel in Italy on October 6, 1912, and she was deeply affected by his tragic death in a foreign land, where she was a stranger and did not know the language. He left her by his will all his property, which was a considerable estate. She was wholly unfamiliar with business and employed Edward G. Henkel, who was a member of the same firm of attorneys as Rhoderick P. Hollett and who attended to the probate work of the firm, to close up the estate. The estate of Pond was settled and the administration closed, and shortly thereafter, in January or February, 1914, she applied to Henkel to draft her will. Hollett was either on a trip to Japan or away from the office sick and had nothing whatever to do with that will and had no knowledge of it until long afterward. He was and continued to be the attorney and business agent of Mrs. Pond in the management of her property, loaning money and making investments, and a confidential relation existed between them which continued until her death. The will appointed the complainants, Lillie P. Holmes and Walter E. Pond, and the defendant, Hollett, executors and trustees, and directed that the income from the estate should be divided equally between Lillie P. Holmes and Walter E. Pond. There is not the slightest reason for saying that the will was not the independent product of Mrs. Pond and did not express her intention, uninfluenced by

310—3

anybody. She took the will and what became of it is unknown, but its last appearance was when she took it to the office of the firm of which Hollett was a member and asked for him. She went into his room, and in two or three minutes his stenographer, Dorian M. Solon, was called in. Mrs. Pond had the old will with her and a memorandum on a piece of paper, and Hollett said that she wanted to make her will. She said that she wanted to leave a bequest to the Wesley Memorial Hospital in memory of her husband but did not know the amount; that it was to endow either a room or a bed, and she would find out how much each would cost and let the stenographer know. Referring to the paper memorandum, she said she wanted Hollett appointed executor and trustee and the income to be divided, one-third to Mrs. Holmes and two-thirds to Walter E. Pond, and she gave reasons which need not be repeated here but which were natural and persuasive in their nature. She gave the old will to the stenographer, who wrote a will leaving the amount to the Wesley Memorial Hospital blank, and she had no directions whatever except the old will and the directions of Mrs. Pond, and the amount of $5000 for the hospital was afterward inserted. A few days after her visit when she gave directions to the stenographer she came back, on November 17, 1917, read the will in the outer office, said that was what she wanted, and executed it. Five days afterward she returned to the office with the second will and said that she was dissatisfied with it; that she had thought it over and decided that an unequal division of income would make ill-feeling and therefore she wanted to change it; that she had telephoned Hollett the night before and asked if the stenographer would re-write the will. Hollett was not present and there was no one in the office except Miss Solon. The will having been prepared, Mrs. Pond requested Miss Solon to call witnesses, which she did, and the will was executed and is the will set aside by the decree. There was not a word of evi-

dence that Hollett had anything to do with the preparation of either will, that the executrix could be easily influenced by anybody or that she was influenced by him. There was evidence tending to show that while she was rich she was close in money matters and nervous sometimes; that there was such a general decline as is common in persons of her advanced age, and that she grieved very often for the death of her husband and would burst into tears at the mention of his death by herself or others. The evidence was that the relations between her and her husband had been most affectionate, and her grief, even if unusual, had no tendency to show that she was subject to the influence of Hollett or anyone else.

The only ground upon which it was alleged in the bill or claimed at the trial, or is now claimed, that the will was void, is that it contained the following provision: "Should said Rhoderick P. Hollett act as attorney or counselor for said executor or trustee, I desire that he receive such additional compensation for his services as such attorney or counselor as may be just and equitable." Based on this provision of the will the court gave a number of instructions stating as a matter of law that Hollett was a beneficiary under the will. Here is one of them:

"The court instructs the jury that Rhoderick P. Hollett received a special and substantial benefit from the will in question and is a beneficiary thereunder and further that the said Rhoderick P. Hollett occupied a fiduciary and confidential relation towards Sarah A. Pond in which relation the said Rhoderick P. Hollett was the dominant party and Sarah A. Pond, the dependent party."

In another instruction the court told the jury that the confidential relationship was undisputed and that Hollett was a beneficiary under the will. The confidential relationship was not disputed, but that, alone, did not raise or create any presumption of undue influence. The relation to create such a presumption must be used for the purpose of

procuring the making of a will in favor of certain parties and be such as to destroy the freedom of the testator's will and purpose. (*Chaney* v. *Baker,* 304 Ill. 362; *Gregory* v. *Richey,* 307 id. 219.) Hollett was not a beneficiary by virtue of that provision of the will and did not profit by it in any respect. (*Compher* v. *Browning,* 219 Ill. 429; *Williams* v. *Ragland,* 307 id. 386.) To say that one becomes a beneficiary by being paid what is fair and equitable for services is utterly groundless. A dollar's worth of service for a dollar neither renders the one who performs the service nor the one for whom it is performed the beneficiary of the other.

Counsel for appellees say that Hollett was a beneficiary under the will in five different particulars: (1) The fact that he was executor and trustee would give him rank, standing and prestige and make it easier for him to get credit; (2) that he would be entitled to the statutory fee as executor; (3) that he would be entitled to compensation as a trustee; (4) that under the provision he might be attorney for the executor and receive fees as such, and the law does not allow fees for such services unless specifically provided for in the will; (5) the same reason as the fourth repeated. It is admitted that the second and third specifications are baseless, because the law gives the fees and compensation. The first would establish a rule that no testator can select as executor or trustee anyone sustaining a confidential relation to him who is concerned in any way in the preparation of his will, because he would thereby confer upon him the benefit of rank and standing. No court has ever stated or approved such a doctrine, and the universal rule is that the benefit must be direct and not merely consequential. It could not consist of rank or standing in the community or in business relations generally. The fourth reason, repeated in the fifth, has already been considered, and the will did not make Hollett a beneficiary either in law or fact.

Counsel for appellees seek to sustain their position that Hollett received a substantial benefit raising a legal presumption of undue influence, but none of the cases cited sustain that position. In *Yess* v. *Yess,* 255 Ill. 414, the executrix was eighty-three years old, and the execution of the will was procured by her son, Joseph Yess, who was given a larger part of the estate and the children of other sons were practically disinherited. In *Donnan* v. *Donnan,* 256 Ill. 244, there was inequality in the distribution of the property and the will was procured by the beneficiary. In *Gum* v. *Reep,* 275 Ill. 503, the will was drawn by a son who was appointed executor and trustee and was a devisee under the will. In *Snyder* v. *Steele,* 287 Ill. 159, the person who drew the will profited by the confidential relation to the extent of a legacy of $5000. No case has been found which tends in any degree to sustain the argument.

If there had been any ground for finding that Hollett was a beneficiary under the will, there was an entire want of evidence that he inspired, advised or caused the insertion of the provision that he should receive fair compensation if he acted as attorney. The same identical provision was contained in the first will, executed when he was either in Japan or sick at home and when the will was written at the dictation of Mrs. Pond by Henkel, and Hollett did not even know of it until long afterward. The same provision was repeated in the second will, and at the execution of each will Mrs. Pond had a fixed intention to provide that Hollett should be paid, if he rendered services as an attorney, what the services actually were worth. The selection by a testator of one with whom he has had business relations and in whom he has trust and confidence is the thing to be expected in the natural working of a normal and rational mind, and the selection of Hollett by Mrs. Pond was not unnatural in any way. She lived twenty months after the will was executed and spent two intervening winters in California and the summer at Atlantic City, as she had been accustomed

to do before and where she was free from any influence of Hollett.

The bill was unsupported by any evidence fairly tending to prove the charge made, and the court erred in not directing a verdict when moved to give such direction at the close of the evidence, and erred in overruling the motion for a new trial and in entering a decree.

The decree is reversed and the cause remanded.

*Reversed and remanded.*