(No. 21991.—

JESSIE BRINK LONG, Plaintiff in Error, *vs.* JOHN L. BRINK *et al.* Defendants in Error.

*Opinion filed October 21, 1933.*

HOLLAND F. FLAHAVHAN, for plaintiff in error.

MCKINNEY, LYNDE & GREAR, for defendants in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Jessie Brink Long filed her bill in the circuit court of Cook county alleging that her father, Louis H. Brink, died on April 17, 1931, leaving him surviving as his only heirs and next of kin, his widow, Ida J. Brink, his sons, John L., Ernest C. and Laurence H. Brink, and his daughter, Jessie Brink Long, the complainant. The bill sets out an instrument purporting to be the last will and testament of her deceased father. By this purported will he directed the payment of his debts and funeral expenses and left the personal property in the home to his widow. The remainder of his estate, including the commission company known as Brink & Sons, Inc., he directed should be held in trust by his three sons, (naming them,) who were also named executors. Out of the earnings the widow was to be paid such an amount as would sustain her comfortably during her lifetime, and if any profits remained, the same were to be divided equally, at the discretion of the trustees, between the widow and the four children. Upon the death of the widow each son was to receive at once one-fourth of the testator's estate, and the remaining one-fourth was to be held in trust by the three trustees, who were to pay the income therefrom to Jessie Brink Long until her death, at which time her lawful lineal descendants were to receive her entire trust estate. If she had no such descendants living at her death, the trust estate created for her was at her death to be divided equally among her three brothers. The testator directed that his summer home at Delavan

Lake, Wisconsin, be sold and the proceeds be placed in the trust fund. The bill alleged that Brink was at the time of the execution of the purported will without testamentary capacity, and that the purported will was procured through the exercise of undue influence by the three sons above named. Answers were filed by the defendants denying the allegations of the bill, to which a replication was filed. The trial was had before a jury. At the close of the evidence, on motion of the proponents, the court excluded the evidence and directed the jury to return a verdict establishing the purported will as the last will and testament of Brink, and, upon such verdict being returned by the jury, a decree was entered declaring that the instrument produced was the last will and testament of Louis H. Brink, deceased. The will was admitted to record April 25, 1931, and thereupon letters testamentary were issued to the three sons.

Upon the trial of the cause the proponents produced twenty witnesses, all of whom were acquaintances and close business associates of the deceased. Their testimony showed that Louis H. Brink had gone from a country town to Chicago thirty-three years prior to his death. He had been engaged in the commission business approximately all of that time, and for several years immediately prior to his death had conducted his business under the name of Brink & Sons, Inc., of which corporation he was the president, directing head, and was in charge of the business. His three sons assisted him in the business and transacted some of the business of the company, but its larger and more important affairs were directed and cared for by Brink until he was stricken with apoplexy, which caused his death. Brink is shown by the evidence to have been an active, alert and capable business man, and his corporation did an annual business of two and one-half million dollars. The company was capitalized at $100,000 and had a surplus of $35,000.

The will was prepared by an attorney of Brink's own choosing after full discussion as to the manner and mode of disposing of Brink's property. He had had drawn a prior will but had not executed it because he said he did not understand it. The new draft was made from notes taken during a conversation in Brink's office by the attorney who drew it, and after it had been prepared by this attorney he returned with it to Brink's office. After a half hour's conversation, and after Brink had read the new draft, he himself called in two witnesses, told them this was his will, signed the document and asked them to sign as witnesses, and he also had the attorney sign as a witness. The only showing that any one of the three sons was present at either of these conversations was that one of the three walked through the office at the time of the execution of the will but nothing was said in his presence concerning the will. In the preliminary discussions before the will was drawn Brink talked with his lawyer concerning the members of Brink's family and concerning each item of his real estate and also about his personal property. He stated that his reason for creating a trust in favor of his daughter rather than to treat her one-fourth share the same as the shares of the three sons, was that her husband, Long, had cost him considerable money and he feared that Long would dissipate and squander his daughter's share of the property. The testimony of these witnesses shows that a number of them had had business dealings with Brink throughout various periods, including January, 1931, the month in which the will was executed. Several of them expressed the opinion that Brink was of sound mind.

Plaintiff in error, the contestant, produced eight witnesses. Their testimony was to the effect that Louis H. Brink had for years drunk whiskey to excess. Some of them said that he had become slovenly and careless about his personal appearance, that he had grown old and feeble, and that his memory was not strong enough to retain dur-

ing the later part of a conversation statements made during the earlier part of the same conversation. Numerous occasions were given when it was said Brink had been intoxicated, and one of the witnesses stated that Brink had told the witness he drank straight alcohol.

The testimony of the physician who attended Louis H. Brink during his last illness shows he suffered from diabetes and that he died from a cerebral hemorrhage, resulting in paralysis of his left side. He was unconscious during the time this witness attended him.

Complaint is made of the action of the trial court in sustaining general objections to certain hypothetical questions propounded by the counsel for plaintiff in error to a medical witness whose qualifications were not questioned, and who was, apparently, called as an expert witness. No part of any of the hypothetical questions is contained in the abstract of the evidence in the case, nor are the objections and rulings of the court thereon found in the abstract. Rule 14 of this court requires any person bringing a case to this court for review to furnish a full and complete abstract of the record. This must be sufficient to enable the court to determine therefrom, without resorting to the record itself, whether the errors assigned are well taken. When this is not done this court will not explore the record to determine whether the assignments of error should be sustained. It will therefore be assumed that such ruling of the trial court was correct. *People* v. *Raboin,* 316 Ill. 75.

The remaining assignment of error is that the trial court erred in directing a verdict sustaining the will of Louis H. Brink. The practice is the same as in actions at law when a motion is made to direct a verdict at the close of the evidence in a will contest. The party who resists the motion is entitled to the benefit of all the evidence in its aspect most favorable to him. He is also entitled to the benefit of all presumptions that may reason-

ably be drawn therefrom. The question such motion presents is whether there is any evidence fairly tending to prove the cause of action or facts alleged in the bill. If the evidence, with all the inferences that can reasonably be drawn from it, is not enough to support a verdict in favor of the contestant and the result would be that if such a verdict were returned it would have to be set aside, then in such case the trial court may properly direct a verdict. *Grantz* v. *Grantz*, 314 Ill. 243, at p. 250.

While it is true in the instant case that Louis H. Brink's three sons were employed in the business of the corporation of which he was president, yet there is no evidence whatever that any or all of them had anything whatever to do with the making of their father's will. The only connection that is shown to have existed between them and the attorney who drew the will, at any time, is the fact that this attorney represented the sons at the hearing on the petition for probate of the will. Furthermore, there is no evidence whatever that proves, or tends in any way to prove, that any fiduciary relationship was ever created or existed between the testator and his three sons or any of them. For these reasons the rule laid down in *Gum* v. *Reep*, 275 Ill. 503, and similar cases cited by plaintiff in error's counsel, has no application to the instant case and this case is not controlled by the holdings in those cases.

As to any lack of testamentary capacity, and considering the evidence in the most favorable light it can be given, and giving to the plaintiff in error every reasonable and proper inference that can be deduced therefrom, the most that can be said on the subject of testamentary capacity is, that Louis H. Brink had reached the age of sixty-six years; that he had diabetes; that he was somewhat feeble; that whereas formerly he had been neat and careful of his personal appearance he had become careless and slovenly as to his dress, and that whereas he formerly was quick and alert in his bearing he had be-

come slow and somewhat forgetful. It does not appear whether this forgetfulness occurred only when he was in his cups or when he was not drinking. It also appeared that he drank and had been intoxicated on numerous occasions. There was no evidence tending to show that the testator lacked sufficient mental capacity to understand who were the natural objects of his bounty, the nature, character and extent of his property, to understand the particular business in which he was engaged when he made his will or to formulate and put into effect a plan for the disposition of his property. Eccentricity, uncleanliness, slovenliness, neglect of personal appearance and clothing, offensive and disgusting habits or conduct, do not constitute or establish the want of testamentary capacity or unsoundness of mind. (*Estes* v. *Clark,* 317 Ill. 585.) Nor is the want of such capacity established by proof of the use of intoxicating liquor unless such use is shown to have existed sufficiently to have impaired the testamentary capacity of the testator, or that such testamentary capacity was impaired by the testator being under the influence of intoxicating liquor at the time the will was made. *Moriarity* v. *Palmer,* 286 Ill. 96; *Ravenscroft* v. *Stull,* 280 id. 406.

We are therefore of the opinion that there was no evidence in this record fairly tending to prove either that Louis H. Brink at the time he made his last will and testament lacked testamentary capacity or that the will was procured by the exercise of undue influence, and the record is free from prejudicial error.

Finding no error in the record, the decree of the circuit court is therefore affirmed.

*Decree affirmed.*