(No. 44689.—)

WILLIAM JOSEPH BREAULT *et al.*, Appellants, v. HAROLD L. FEIGENHOLTZ, Exr., *et al.*, Appellees.

*Opinion filed January 26, 1973.—Modified on denial of rehearing May 15, 1973.*

RYAN, J., took no part.

G. KENT YOWELL, of Chicago (YOWELL and YOWELL, and RANDALL MITCHELL, of CHAPMAN and CUTLER, of counsel), for appellants.

BAKER & McKENZIE, of Chicago (FRANCIS D. MORRISSEY, THOMAS F. TOBIN, JAMES A. DUNKIN and MICHAEL P. CONNELLY, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This case involves a contest in the circuit court of Cook County seeking to set aside the will of Oscar J. Breault, deceased, alleging that it was a product of undue influence. At the close of the petitioners' evidence, the trial court directed a verdict in favor of respondents, and petitioners appeal to this court contending: (1) the evidence presented did not warrant a directed verdict for respondents; (2) this court should enter judgment for petitioners because undue influence was established as a matter of law; and (3) the trial court erred in the exclusion of certain evidence and in denying their requests that respondents admit certain facts in accordance with Rule 216. (Ill. Rev. Stat. 1969, ch. 110A, par. 216.) No issue of testamentary capacity is raised.

This is a part of protracted litigation which has prevailed over many years. *In re Estate of Breault (1963), 29 Ill.2d 165; Breault v. Feigenholtz (1965), 250 F. Supp. 551, aff'd (7th cir. 1966), 358 F.2d 39, cert. denied (1966), 385 U.S. 824; In re Estate of Breault (1965), 63 Ill. App. 2d 246; Breault v. Feigenholtz (7th cir. 1967), 380 F.2d 90; People ex rel. Dahm v. Corcoran (1968), 39 Ill.2d 233; In re Estate of Breault (1969), 113 Ill. App. 2d 356; Breault v. Feigenholtz (1970), 128 Ill. App. 2d 1, rev'd (1973), 54 Ill.2d 185;* and *In re Estate of Breault (1971), 1 Ill. App. 3d 899.*

A short resume of events preliminary to discussion of the issues here involved is in order. Kathryn M. Breault died August 3, 1952, leaving a last will and testament which devised and bequeathed the bulk of a substantial estate to Harold L. Feigenholtz and Richard Dahm, as

trustees, for the benefit of her son Oscar, during his lifetime. The assets primarily consisted of stock in the Brolite Company, Inc., a family business. Dahm, it appears, had been a long-time employee of the company; and Feigenholtz, who was retained as her attorney shortly before she executed her will, became the company president one year after her death. Under the provisions of the trust created by the will, Oscar was to receive the income with a discretionary power in the trustees to invade the corpus if and when they felt it necessary. It further provided that if after three years from the trust's inception the trustees believed Oscar was competent to handle the business, the corpus could be turned over to him. Oscar also received a general testamentary power of appointment over the assets, and if this power was not properly exercised, the estate was to be distributed among three specified charities.

Oscar married three times. Kenneth Breault, a respondent in this action, was the only issue of the first marriage that ended in divorce. On May 6, 1942, Oscar married Florence Breault. This marriage was apparently unhappy and ended in divorce in October, 1954. William Joseph and Bonnie Jo Ellen Breault, who are petitioners herein, were born of this marriage. On November 9, 1954, Oscar married the respondent, Estelle, and on November 18, 1954, he executed his last will and testament which is now in issue.

Petitioners claim that this will was a product of undue influence which Harold Feigenholtz and his nephew, Eugene Busch, exerted upon Oscar during the time he was the income beneficiary under Kathryn's trust. They also say that at the time Oscar executed his will (November 18, 1954) he was acting wholly under the undue influence of Feigenholtz and Busch. Therefore they say that the instrument is invalid.

At trial, petitioners testified that the last time they saw their father was in Chicago in 1955, although both

stated they had several telephone conversations with him after this meeting and had corresponded with him. Florence Breault, Oscar's second wife and petitioners' mother, testified that from approximately 1951 or 1952 until his death, Oscar had visited them and sent gifts on two occasions.

Estelle Breault, the surviving wife and income beneficiary under his will, testified that she and Oscar lived in Illinois from the date of their marriage (November 9, 1954) until September, 1956, when they moved to Florida, where they resided until his death (July 16, 1959). While in Florida, she stated that he managed an automobile shop, which was owned by the trust, and raced automobiles. He had three different boats during this period and several motor vehicles for his personal use.

The sole witness to testify to the circumstances occurring at the time Oscar executed his will was Eugene A. Busch, the attorney who drafted the contested document and who represented the Brolite Company as its attorney in various matters. Called as an adverse witness (Ill. Rev. Stat. 1969, ch. 110, par. 60), he stated that on November 15, 1954, Oscar telephoned and informed him that he had remarried and wished to execute a will similar to that of his mother's. Oscar arrived at Busch's office with a copy of her will and instructed Busch as to the disposition of his estate. The powers of the trustees contained in his mother's will were adopted in his will with only minor variations. He made his wife Estelle the income beneficiary of the trust during her lifetime, and upon her death this income was to be paid to his three children. The trust, of which Feigenholtz was designated as sole trustee, was to continue until the youngest child reached age 40, then to terminate and each to receive 5% of the estate; the 85% balance was to be paid to Wesley Memorial Hospital (a respondent).

Busch denied that he told Oscar what provisions to put in the instrument, and when Busch inquired as to the

size of the bequest to Oscar's children, *i.e.,* 5% each, Oscar replied that he had not seen Kenneth for years, and Florence, his second wife, had just concluded a bitter divorce action which he claimed had resulted in a judgment against him for $250,000. Upon Busch's further inquiry as to the reasons why Oscar wanted to have his children wait until the youngest reached the age of 40 before the corpus was to be distributed to them, Oscar replied, "I know whatever money I give to the kids will find its way into her (Florence) hands ***." Oscar then stated that he wanted Feigenholtz to be the trustee because he and Feigenholtz had worked well together and the latter had managed the Brolite Company. Oscar also believed that Feigenholtz, a business consultant, was a former professor at a Chicago area law school.

A copy of the prepared will was given to Oscar on November 16, and two days later he visited Busch's office and executed the document. Before Oscar signed, Busch advised him to reconsider raising the percentage of his bequests to the children but he, after reading the will, signed it and requested that Busch retain the original. During this period (November 15-18, 1954) Busch said that Feigenholtz was not in Chicago.

Busch further testified that he informed Oscar that the will could be amended or revoked by codicil and any attorney could help him to do so. On two subsequent inquiries by Busch, Oscar indicated no desire to execute a new will.

Harold L. Feigenholtz, a co-trustee under Kathryn's will and the sole trustee under Oscar's will, was called as an adverse witness by petitioners. He testified that Oscar received anything he wanted during the six years he was the income beneficiary under Kathryn's will and approximately $300,000 was distributed from the trust income for his benefit. Feigenholtz also said that Oscar examined the provisions of his mother's will and the accountings which were prepared in relation to the income disbursed

from the trust and any time he questioned any of the trustees' actions he was always given a full explanation. He further stated that he and Dahm had, as trustees under Kathryn's will, inquired of Oscar whether he desired to terminate the trust and acquire the corpus and he said he did not so desire. Richard Dahm testified at trial that he and Feigenholtz agreed that Oscar was competent to acquire the assets of the trust but, after discussing the matter with Oscar, the offer was refused.

Petitioners made several offers of proof which they claimed were relevant to the issue of undue influence. This evidence primarily involved matters occurring prior to July 1, 1953, the date on which Kathryn's trust commenced, and after July 16, 1959, the date of Oscar's death. It was also asserted that the purpose of these offers was to establish Feigenholtz's undue influence over Oscar and to indicate the benefits which Feigenholtz received from the Brolite Company, *i.e.*, his salary as company president, several bonuses, his interest in a company profit-sharing plan, and legal fees for services rendered on behalf of the company. The trial court excluded this evidence and at the close of petitioners' case granted respondents' motion for a directed verdict, ruling that the petitioners failed to prove that Feigenholtz and Busch had unduly influenced Oscar in the execution of his will and that Feigenholtz had not received any benefits under the will but was merely being compensated for his services as trustee and company president.

It is now argued that the trial court erred in directing a verdict for respondents. We have held that "verdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based upon that evidence could ever stand." *(Pedrick v. Peoria & Eastern R.R. Co., 37 Ill.2d 494, 510.)* Applying this rule to the evidence and proof in the instant case, we find that the trial court properly granted respondents' motion for a directed verdict. There

is no evidence that Feigenholtz or Busch inspired or advised Oscar as to the disposition of his estate. Busch was the only witness to testify as to the circumstances surrounding the execution of the contested will and his uncontradicted testimony does not establish that Oscar was unduly influenced when he signed the instrument.

Oscar had recently remarried after an apparently bitter divorce, and it is reasonable that he wished to insure the financial security of his present wife, for he was aware that if he died intestate the trust assets under the terms of Kathryn's will would be distributed to the charities. His selection of Feigenholtz as trustee does not demonstrate that Oscar was unduly influenced, for it is only natural that Oscar would select a trustee in whom he had confidence which had developed because of their personal and business relationship. *Pond v. Hollett, 310 Ill. 31, 37.*

Petitioners urge that Oscar was dependent on Feigenholtz and Dahm for his support and would not have alienated the trustees by executing a will which they did not approve. They seek to strengthen this position by enumerating the various items, such as housing, automobiles, a boat and repair shop, which Oscar used but which were owned by the trust, and the numerous weekly payments of $100 to $250 which the trustees sent to him. However, the record indicates that from 1956 until his death in 1959 Oscar resided in Florida and could have executed a subsequent will or codicil without the trustees' knowledge had he so desired. Moreover, petitioners fail to recognize that Kathryn's intent, as evidenced by her will, demonstrates her desire to protect Oscar financially by various "spendthrift" provisions. Thus the trustees acted accordingly by maintaining title to the property which Oscar used and by authorizing numerous though small cash disbursements to him.

They also argue that Oscar was unduly influenced because of misrepresentation of facts. The first instance they complain of centers about his belief that a $250,000

judgment had been entered against him as a result of his divorce from his second wife, Florence. They now claim that Busch should have informed Oscar that the divorce settlement was for only $11,000. The record demonstrates that their position is erroneous, for Busch, although admitting he knew of the decree, stated that he had no specific knowledge of its provisions until Oscar died because he had not directly participated in the litigation.

The second misrepresentation concerns Oscar's belief that Feigenholtz had been a law-school professor. Although Feigenholtz did not attain the rank of professor, he did lecture at the school approximately 30 years prior to the time of the execution of Oscar's will. We believe that this contention is at most a question of semantics and does not support the allegation of undue influence.

Nor do we find persuasive petitioners' contention that Oscar could be influenced to sign anything, as evidenced by his approval of the "Second Report and Account" dated June 30, 1955, because, as they assert, the report was incomplete in that it omitted receipts and carried an incorrect total of disbursements. Feigenholtz denied that anyone ever told Oscar that any account was final. Oscar was informed only that each account was as complete as possible for the period covered and he could always question the disbursements and examine the records.

Petitioners further contend that Feigenholtz was instrumental in procuring the will, yet the uncontradicted testimony of Busch indicates that Feigenholtz was not in the city at the time that Oscar requested Busch to draft the document. Furthermore, Busch's testimony establishes that Oscar initially proposed that a will be drawn in accordance with the provisions which he desired.

The undue influence necessary to set aside a will must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another. *(Mosher v. Thrush (1949), 402 Ill. 353,* and cases therein cited.) The record demonstrates that the

evidence presented to the jury did not satisfy the aforementioned requirements and the trial court properly granted a directed verdict.

Petitioners also argue that the evidence raised a legal presumption of undue influence. They assert that Feigenholtz received a substantial benefit from the will, that he was a dominant party in the fiduciary relationship which existed between himself and Oscar, and that he was instrumental in procuring Oscar's will.

The legal presumption of undue influence will arise when the fiduciary party who procures the will substantially profits as a beneficiary or legatee. *(Brown v. Commercial Nat. Bank (1969), 42 Ill.2d 365.)* Petitioners, citing *Gum v. Reep (1916), 275 Ill. 503,* and *Teter v. Spooner (1917), 279 Ill. 39,* whose rationale was based on *Reep,* seek to extend the aforementioned requirement to an executor or trustee when these parties receive "benefits" from performance of their duties, such as salaries, legal fees and bonuses. However, "the mere fact that an attorney or confidential friend who writes the will is named executor or trustee does not alone raise a legal presumption of undue influence." *(Williams v. Ragland (1923), 307 Ill. 386, 390.)* Moreover, the authorities upon which petitioners rely do not support their position. In *Ragland,* the court noted that the facts in *Reep* placed it within the general rule that a fiduciary relation must be shown to exist between the testator and a legatee, because in *Reep* the dominant fiduciary party was also a legatee.

Even assuming *arguendo* the validity of petitioners' contention that Feigenholtz substantially benefited from Oscar's will, their position remains untenable. "The facts, that a confidential agent of a testator or testatrix has drawn the will, or procured it to be drawn, and has been made executor and trustee thereunder, may be suspicious circumstances which call for additional scrutiny as to the fairness of the transaction, but these facts alone do not invalidate the will where all the other circumstances

developed by the evidence show that there was no fraud or imposition or attempt to exercise undue influence." *(Compher v. Browning (1906), 219 Ill. 429, 438.)* As we heretofore noted, all the circumstances of the present case fail to sustain petitioners' position.

It is further insisted that this court enter a directed verdict because undue influence was established as a matter of law. In view of our disposition of the first issue, we find this contention without merit.

Petitioners further contend that the trial court erred in excluding evidence which related to Feigenholtz's conduct prior to July 1, 1953, the commencement date of Kathryn's trust, and after July 16, 1959, the date of Oscar's death. It is established "that to avoid a will upon the ground of undue influence it must be directly connected with the execution of the will itself." *(Mosher v. Thrush, 402 Ill. 353, 357.)* Moreover, it is petitioners' contention that Feigenholtz, as trustee of Kathryn's estate, exerted undue influence upon Oscar while he was the income beneficiary of the trust. The trial court properly excluded evidence of events which occurred before Feigenholtz assumed his duties as trustee. Similarly they argue that Feigenholtz's conduct relative to his actions as executor of Oscar's estate, as summarized in our prior decision of *In re Estate of Breault (1963), 29 Ill.2d 165,* tends to prove undue influence. However, as we observed in that case, at page 180, "while we doubt the wisdom of several of the executor's actions *** we see neither waste, wilfulness nor bad faith" which would require reversal of the trial court's refusal to remove Feigenholtz as executor.

They further claim that it was error to exclude evidence of the "benefits" which Feigenholtz received as company president. In *Pond v. Hollett, 310 Ill. 31,* the appellant, who was the executor and trustee of an apparently substantial estate, was also empowered to receive just and equitable legal fees when acting as the attorney for the executor and trustee. The contestants

argued that a presumption of undue influence arose because he was a beneficiary in the will. This court rejected the contention stating: "To say that one becomes a beneficiary by being paid what is fair and equitable for services is utterly groundless." (310 Ill. at 36.) In the present case a review of petitioners' offer of proof indicates that Feigenholtz did receive a substantial salary as company president. However, there is no assertion that this salary or other attendant benefits were unfair or inequitable in relation to his conduct of the business. We therefore find no error in the evidentiary limits set by the trial court.

Petitioners finally argue that the trial court erred in refusing their requests that respondents admit certain facts pursuant to Rule 216. (Ill. Rev. Stat. 1969, ch. 110A, par. 216.) Had the trial court granted these motions, they contend, summary judgment would have been entered on their behalf.

We do not agree. Three requests to admit facts, primarily directed toward Feigenholtz, were presented, and his objections to a substantial portion of the first two requests were sustained and the requests denied. In response to the third request, he answered many of the statements and the trial court sustained objections to the remainder.

After examination of the first request, we find that many of the questions to which the trial court sustained objections would have required that Feigenholtz state conclusions as to legal relationships or answer questions pertaining to matters which occurred prior to the commencement of Kathryn's trust.

The second motion requested that Feigenholtz and Busch admit the authenticity of statements which were apparently excerpted from their depositions. A motion for summary judgment may be supported by depositions (Ill. Rev. Stat. 1969, ch. 110A, par. 191(b)), and it would be unnecessary to tender excerpts of depositions in the form

of a request to admit facts before seeking summary judgment.

The trial court properly denied, in part, petitioners' third request to admit facts because the objectionable questions pertained to previous depositions or to matters concerning the management procedures or financial condition of the Brolite Company and not to any question specifically directed toward the exercise of undue influence over Oscar. After careful examination of petitioners' requests, we cannot say that the trial court erred in sustaining defense objections.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.